**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                          No. 98-4002

MICHAEL J. MIKALAJUNAS,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                          No. 98-4003

CRAIG E. LARGENT,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4031

MICHAEL J. MIKALAJUNAS,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CR-89-314-JFM)

Argued: April 9, 1999

Decided: July 21, 1999

Before MURNAGHAN, WILKINS, and NIEMEYER,
Circuit Judges.

Reversed by published opinion. Judge Wilkins wrote the majority opinion, in which Judge Niemeyer joined. Judge Murnaghan wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Joseph Lee Evans, Assistant United States Attorney, Baltimore, Maryland, for Appellant. Michael Daniel Montemarano, MICHAEL D. MONTEMARANO, P.A., Baltimore, Maryland, for Appellee Mikalajunas; Brian Joseph Murphy, Baltimore, Maryland, for Appellee Largent. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellant.

_____

## OPINION

WILKINS, Circuit Judge:

The United States appeals a decision of the district court granting relief to Michael J. Mikalajunas and Craig E. Largent (collectively, "Appellees") pursuant to 28 U.S.C.A. § 2255 (West Supp. 1999) in the form of reductions in their sentences for second-degree murder, see 18 U.S.C.A. § 1111(a) (West Supp. 1999). Mikalajunas cross appeals, arguing that the district court erred in failing to find that he was deprived of the effective assistance of counsel due to counsel's failure to object at sentencing to the enhancement of his offense level for physical restraint of the victim. See U. S. Sentencing Guidelines Manual § 3A1.3 (1989). We hold that the district court correctly determined that Mikalajunas' counsel was not constitutionally ineffective, but that the district court incorrectly granted § 2255 relief. Accordingly, we reverse.

I.

Appellees pled guilty to the second-degree murder of Christopher Weathers pursuant to plea agreements that stipulated to a base offense level of 33 for each. Largent's plea agreement also stipulated that an enhancement for physical restraint of the victim was appropriate

2

under U.S.S.G. § 3A1.3. At sentencing, the district court enhanced Appellees' offense levels by two levels for restraint of the victim in addition to making other adjustments. The court sentenced Mikalajunas and Largent, respectively, to 262 and 180 months imprisonment. Neither Mikalajunas nor Largent pursued an appeal.[1]

Mikalajunas' brother, who is not a party to this appeal, pled guilty to being an accessory after the fact to the second-degree murder of Weathers. At sentencing, he challenged the applicability of a proposed upward adjustment to his offense level for restraint of the victim and later appealed the decision of the district court to enhance his offense level pursuant to § 3A1.3. This court agreed that the enhancement was improperly applied, reasoning that "[a]n upward adjustment for restraint is to be made in the context of an act which adds to the basic crime" and that because "[e]very murder involves the ultimate restraint," the restraint of Weathers did not add anything to his murder. See United States v. Mikalajunas, 936 F.2d 153, 156 (4th Cir. 1991).

In April 1997, Mikalajunas and Largent filed motions pursuant to 28 U.S.C.A. § 2255, claiming that they had been deprived of their Sixth Amendment right to the effective assistance of counsel because, inter alia, counsel had failed to preserve an allegation of error with respect to, and to appeal, the application of the § 3A1.3 enhancement. The district court concluded that counsel were not ineffective for failing to appeal the issue but reduced Appellees' sentences, ruling that failure to correct the erroneous application of the restraint of victim enhancement would constitute a miscarriage of justice. Accordingly, the district court reduced Mikalajunas' sentence to 210 months imprisonment and Largent's sentence to 168 months imprisonment.

II.

The Government maintains that because Appellees did not appeal the enhancement of their offense levels under § 3A1.3, they have procedurally defaulted their claim and relief on that basis is inappropriate. In order to collaterally attack a conviction or sentence based upon

_____

[1] Although Mikalajunas noted an appeal, he voluntarily dismissed it.

3

errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. See Murray v. Carrier, 477 U.S. 478, 488 (1986). And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. See id. at 496.

Acknowledging their failure to appeal the enhancement of their offense levels for restraint of the victim, Appellees contend that they can establish cause to excuse their procedural default based on either ineffective assistance of counsel or a change in the law. Alternatively, they contend that they are actually innocent of the enhancement. We disagree with all of these assertions.

To establish cause for their default based upon ineffective assistance of counsel, Appellees must show that their attorneys' performance fell below an objective standard of reasonableness and that they suffered prejudice as a result. See Murray , 477 U.S. at 488; Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's failure to pursue a basis for appeal by reason of a mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation. See Smith v. Murray, 477 U.S. 527, 534-35 (1986). Here, counsel's decision not to challenge Appellees'§ 3A1.3 enhancements for restraint of the victim--a decision made prior to our decision in Mikalajunas holding such an enhancement to be improper--at worst amounted to a miscalculation of the likelihood of success of such a challenge. Prior to Mikalajunas there was no controlling authority dictating a conclusion that an enhancement for restraint of the victim was appropriate only when the restraint "adds to the basic crime" and that because "murder involves the ultimate restraint," no restraint of victim enhancement is appropriate for murder. Mikalajunas, 936 F.2d at 156. Indeed, neither the plain language of the guideline provision at issue nor decisional law suggested that

4

such an argument had any chance of proving meritorious. See Smith, 477 U.S. at 535 (recognizing "that `the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default'" (quoting Murray, 477 U.S. at 486-87)). Therefore, Appellees have failed to demonstrate ineffective assistance of counsel as cause for their procedural default.**2**

Further, Appellees cannot demonstrate cause based on an argument that a change in the law--the intervening decision of this court in Mikalajunas--excuses their default. In order to justify the failure to raise an issue during trial and direct appeal based on a subsequent change in the law, the state of the law must have been such that the legal basis for the claim was not reasonably available when the matter should have been raised. See Turner v. Jabe, 58 F.3d 924, 927-28 (4th Cir. 1995). There is no ground for an argument that the question decided in Mikalajunas (whether the enhancement for restraint of victim applies when the underlying offense of conviction is murder) could not have been raised at sentencing or on direct appeal. In fact, this is exactly what another member of Appellees' criminal undertaking did.

With Appellees having failed to demonstrate cause and prejudice to excuse their failure to appeal the applicability of the restraint of victim enhancement, the question remains whether they can show actual innocence to excuse their procedural default. See Sawyer v. Whitley, 505 U.S. 333, 339 (1992) (explaining that even when habeas petitioner cannot excuse procedural default by demonstrating cause and prejudice, court may review merits of claim if petitioner can show actual innocence). Typically, to establish actual innocence a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent. See id. at 339-41. Although rec-

_____

**2** Likewise, we reject Mikalajunas' claim on cross appeal that the district court erred in concluding that he was not deprived of the effective assistance of counsel by counsel's failure to raise on direct appeal an allegation that § 3A1.3 should not have been applied to enhance his offense level.

5

ognizing that the concept of actual innocence does not lend itself easily to sentencing determinations, the Supreme Court has held that a petitioner may establish actual innocence in the capital sentencing context by demonstrating by clear and convincing evidence that but for an alleged error committed during his sentencing "no reasonable juror would have found him eligible for the death penalty under" applicable law. Id. at 350. The Court has not addressed whether the actual innocence exception can be applied to sentencing outside the capital context, and this question has divided the courts of appeals. Compare Embrey v. Hershberger, 131 F.3d 739, 740-41 (8th Cir. 1997) (en banc) (holding that actual innocence exception "applies only to the sentencing phase of death cases"), cert. denied, 119 S. Ct. 78 (1998), and United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993) (ruling that "[a] person cannot be actually innocent of a noncapital sentence"), with Mills v. Jordan , 979 F.2d 1273, 1278-79 (7th Cir. 1992) (holding that a showing of actual innocence of a predicate offense that is necessary for habitual offender sentencing enhancement may excuse procedural default).**3**

In United States v. Maybeck, 23 F.3d 888, 892-94 (4th Cir. 1994), a panel of this court ruled that the actual innocence exception may be applied in § 2255 to noncapital sentencing proceedings and that Maybeck was actually innocent of being a career offender, see U.S.S.G. § 4B1.1, because one of the predicate offenses necessary to qualify him for career offender status actually was not a crime of violence. See Maybeck, 23 F.3d at 892-93. Appellees argue that Maybeck stands for the proposition that the actual innocence exception applies to excuse a procedural default whenever a movant is "innocent" of any sentencing adjustment alleged to be error. And, because the § 3A1.3 enhancement for restraint of victim was erroneously applied to them, they conclude that they are "actually innocent" of that adjustment.

_____

**3** The Fifth Circuit has ruled that, assuming without deciding that the actual innocence exception is available in a noncapital sentencing context, a showing of actual innocence would require a demonstration that but for alleged error the defendant "would not have been legally eligible for the sentence he received." Smith v. Collins, 977 F.2d 951, 959 (5th Cir. 1992).

6

Appellees' reading of <u>Maybeck</u> cannot be correct. If the actual innocence exception is available anytime a guideline is misapplied (such that the defendant is "actually innocent" of the application of the guideline), the actual innocence exception would swallow the rule that issues not raised on appeal cannot be considered in a § 2255 motion absent a showing of cause and prejudice to excuse the default. Such a reading of <u>Maybeck</u> would mean that whenever a movant is prejudiced by the misapplication of a sentencing guideline and does not raise the error on direct appeal, a federal court may nevertheless correct the error during a § 2255 proceeding, entirely eliminating the cause portion of the cause and prejudice requirement. We decline to give <u>Maybeck</u> such an absurdly broad reading. Rather, we conclude that under the reasoning of <u>Maybeck</u> actual innocence applies in non-capital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision. The error at issue in <u>Maybeck</u> involved the application of the career offender provision. And, in reaching its holding, the panel in <u>Maybeck</u> relied on decisions that had extended the actual innocence exception to noncapital sentencing in the context of habitual offender provisions and that stressed the necessity of defining the actual innocence exception narrowly in the context of noncapital sentencing. <u>See id.</u> at 893 (citing <u>Waring v. Delo</u>, 7 F.3d 753, 757 (8th Cir. 1993), warning "that the actual innocence exception in a noncapital sentencing case must be defined by a narrow, objective standard"; <u>Mills</u>, 979 F.2d at 1279, holding "that the actual innocence exception applies to habitual offender proceedings ... whether or not they involve the possibility of capital punishment"; and <u>Jones v. Arkansas</u>, 929 F.2d 375, 381 & n.16 (8th Cir. 1991), ruling that a defendant was actually innocent of a habitual offender provision that did not apply to him). Most importantly, a broader reading of <u>Maybeck</u> would conflict squarely with Supreme Court authority indicating that generally more than prejudice must exist to excuse a procedural default.**4** Accordingly, we reject

_____

**4** The Government also contends that the actual innocence exception cannot be applied here because it applies only when the defendant is asserting a constitutional violation. In support of its claim, the Government contends that the Supreme Court has recognized the availability of the actual innocence exception only in cases in which an alleged constitutional violation was at issue. The Court, however, has not refused to apply the actual innocence exception in a nonconstitutional context; that issue simply has never been before the Court. And, the Government's

7

Appellees' contention that they have demonstrated actual innocence to excuse their failure to raise on direct appeal a challenge to the application of the § 3A1.3 enhancement.**5**

III.

The Government also asserts that even if Appellees had not procedurally defaulted their claim that the § 3A1.3 enhancement did not apply to them, they would not be entitled to relief because misapplication of the sentencing guidelines does not amount to a miscarriage of justice. Section 2255 provides a means for one convicted of a federal offense to collaterally attack a conviction or sentence that, inter alia, "was imposed in violation of the Constitution or laws of the United States," and thus § 2255 relief is not limited to constitutional error in a conviction or sentence. 28 U.S.C.A. § 2255; see Davis v. United States, 417 U.S. 333, 345-46 (1974). But, the scope of review of nonconstitutional error is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves "a fundamental defect which inherently results in a complete miscarriage of justice," United States v. Addonizio, 442 U.S. 178, 185 (1979) (internal quotation marks omitted), or is "inconsistent with the rudimentary demands of fair procedure," United States v. Timmreck, 441 U.S. 780, 784 (1979) (internal quotation marks omitted). Compare Addonizio, 442 U.S. at 184-90 (concluding that change in United States Parole Commission's parole policies did not effect

---

argument cannot be squared with Maybeck, in which this court excused a procedural default based upon the actual innocence exception involving the misapplication of the career offender provision, not a constitutional error. Consequently, Maybeck forecloses the Government's argument on this score.

**5** Mikalajunas also asserts that at resentencing the district court should have applied the guideline manual in effect at the time and awarded him a three-level reduction for acceptance of responsibility, rather than the two-level reduction available at the time of his original sentencing. Compare U.S.S.G. § 3E1.1 (1989) with U.S.S.G. § 3E1.1 (1995). Because there was no basis for a grant of relief under § 2255, and accordingly no cause for resentencing, we need not address this argument.

a miscarriage of justice), Timmreck, 441 U.S. at 783-85 (ruling that a technical violation of Federal Rule of Criminal Procedure 11 did not result in miscarriage of justice), and Hill v. United States, 368 U.S. 424, 428 (1962) (holding that denial of allocution at sentencing in violation of Federal Rule of Criminal Procedure 32(a) was not miscarriage of justice), with Davis, 417 U.S. at 346-47 (determining that subsequent change in substantive law making defendant's past conduct lawful is a sufficient basis for collateral attack).

The circuit courts of appeals have reserved judgment on whether a misapplication of the sentencing guidelines could ever support § 2255 relief but have held that errors of guideline interpretation or application ordinarily fall short of a miscarriage of justice. See Burke v. United States, 152 F.3d 1329, 1331-32 (11th Cir. 1998) (holding that sentence imposed contrary to subsequent clarifying amendment to guideline was not a miscarriage of justice), cert. denied, 67 U.S.L.W. 3561 (U.S. June 1, 1999) (No. 98-1369); United States v. Payne, 99 F.3d 1273, 1281-82 (5th Cir. 1996) (concluding that an improper application of the guidelines by the district court is a non-constitutional issue that could have been raised on direct appeal and is not cognizable on collateral review); Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (ruling that claim that fine imposed exceeded maximum allowable under guidelines would not be considered on collateral review when the defendant failed to raise it on direct appeal and there was no miscarriage of justice); Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995) (determining that ordinary questions of guideline interpretation that fall short of being miscarriages of justice are not cognizable under § 2255 and reserving the question of whether guideline error ever could be a miscarriage of justice); Knight v. United States , 37 F.3d 769, 772-74 (1st Cir. 1994) (ruling that ordinary misapplication of sentencing guidelines was not a proper claim under § 2255); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994) (holding that"[a] district court's technical application of the Guidelines" is not"cognizable under § 2255"); Scott v. United States, 997 F.2d 340, 342-43 (7th Cir. 1993) (stating that petitioner could not raise, by means of § 2255, an allegation that the district court misapplied the sentencing guidelines when the sentence had become final, petitioner had not appealed, and the petitioner failed to demonstrate any extraordinary circumstances warranting collateral attack on his sentence); see also United States v.

9

Schlesinger, 49 F.3d 483, 485-86 (9th Cir. 1994) (concluding "that nonconstitutional sentencing errors that have not been raised on direct appeal ... generally may not be reviewed" under§ 2255). We join our sister circuits in holding that a misapplication of the guidelines typically does not constitute a miscarriage of justice. And, we conclude that Appellees' claim that the district court erred in enhancing their offense levels for restraint of the victim is merely an allegation of an ordinary misapplication of the guidelines that does not amount to a miscarriage of justice.

IV.

In sum, we hold that by failing to raise the issue on direct appeal, Mikalajunas and Largent procedurally defaulted their claim that the district court improperly applied the § 3A1.3 adjustment for restraint of victim to enhance their offense levels. Furthermore, the mere misinterpretation or application of a guideline provision generally does not amount to a miscarriage of justice that warrants relief under § 2255. Accordingly, we reverse.

REVERSED

MURNAGHAN, Circuit Judge, dissenting:

I want to make clear what results from the majority opinion. The Appellees, the government, the lower court, and the majority all agree that because of a misapplication of the sentencing guidelines, one of the Appellees will be in jail for one year longer than the sentence provided by law, the other Appellee will be in jail for over four years longer than the sentence provided by law. This was not a procedural error such that it might turn out at re-sentencing that Appellees would be subject to the same sentencing enhancement, in any event. All agree that, without a doubt, Appellees do not qualify for the sentencing enhancement which they received. Citing the"ordinary" nature of the error at issue, see ante at 9, the majority finds itself powerless to prevent the Appellees from serving over five years of admittedly erroneous jail time. Because I do not believe that the state's interest in finality outweighs even one year of a man's life, and because I believe that Supreme Court and Circuit precedent dictate a contrary result, I respectfully dissent.

I.

The defendants were rightfully convicted for second-degree murder. However, their sentences included additions of 52 months in one and 12 months in the other for physical restraint of the victim. That was not interpreted to be improper under the sentencing guidelines at the time of sentencing. However, it was later determined to be so since "every murder involves the ultimate restraint." Hence the victim's restraint did not add anything to his murder. United States v. Mikalajunas, 936 F.2d 153, 156 (4th Cir. 1991). The district judge, under 28 U.S.C.A. § 2255 (West Supp. 1999), reduced Appellees' sentences to their proper levels. The majority now reverses this decision.

II.

I agree with the majority's discussion of the cause and prejudice standard. I note, however, that, given the majority's holding in section III, it is irrelevant that the Appellees in this case procedurally defaulted. Under the majority opinion, even if the Appellees had challenged the Application of U.S.S.G. § 3A1.3 to their crime on direct appeal, and an intervening change in the law (e.g., a subsequent Supreme Court decision or circuit en banc decision) made the interpretation of the sentencing guideline under which they were sentenced erroneous, Appellees would still be unable to avail themselves of § 2255 relief. Cf. Davis v. United States, 417 U.S. 333 (1974) (holding that intervening, non-constitutional change in substantive law could be basis for § 2255 relief).

I have trouble reconciling the majority's approach with the plain language of § 2255, which is, after all, phrased in terms of challenges to sentences. See 28 U.S.C.A. § 2255 ("under sentence," "the sentence was imposed in violation," "the court was without jurisdiction to impose such sentence," "the sentence was in excess," "to vacate, set aside or correct the sentence") cited in United States v. McLamb, 77 F.3d 472, 1996 WL 79438, at **5 (4th Cir. 1996) (unpublished table disposition) (Niemeyer, J., concurring) (writing separately for the exclusive purpose of noting a right to review a sentence despite a procedural default and no waiver of that bar by the government: "I believe that the defendant has a substantive right to review an illegal

11

sentence despite his failure to appeal the issue, and I do not believe that we could permit a defendant to remain in prison under an illegal sentence.").**1**

III.

As the majority acknowledges, the fact that Appellees procedurally defaulted their claim is not the end of the analysis. The Supreme Court has established an exception to the procedural default rule to avoid fundamental miscarriages of justice, when a defendant can meet a certain standard of "actual innocence." See, e.g., Schlup v. Delo, 513 U.S. 298, 322-323 (1995); Sawyer v. Whitley, 505 U.S. 333, 339 (1992); Murray v. Carrier, 477 U.S. 478, 496 (1986). While the "actual innocence" exception was initially formulated in the context of a petitioner who claimed actual innocence of the crime of conviction, the Supreme Court has applied that exception also to capital sentencing determinations. See, e.g., Sawyer v. Whitley, 505 U.S. at 339; Dugger v. Adams, 489 U.S. 401, 410-12 n.6 (1989); Smith v. Murray, 477 U.S. 527, 537 (1986).

The Supreme Court has noted that the actual innocence exception is reserved for cases of "actual as compared to legal innocence." Sawyer v. Whitley, 505 U.S. at 339. The Sawyer Court, however, made clear that "actual" innocence did not mean innocence of the charged crime. In that case, the Court applied the actual innocence exception although the petitioner was concededly guilty of the underlying crime. Sawyer explained that actual innocence in the sentencing context focuses on the elements that render a defendant eligible for the particular penalty. Id. at 347.

Following Sawyer's logic, in United States v. Maybeck, 23 F.3d 888 (4th Cir. 1994), we applied the actual innocence exception to a collateral challenge to a non-capital sentence:

> Except for the obvious difference in the severity of sentences, we see little difference between holding that a defendant can be innocent of the acts required to enhance a

_____

**1** While McLamb is not controlling authority, the reasoning here may be regarded as acceptable logically.

12

> sentence in a death case and applying a parallel rationale <u>in non-capital cases</u>. *** Hence, a defendant in either a capital or non-capital case would, unless excepted from the cause and prejudice requirement, suffer the same general consequence (an enhanced sentence) from being held responsible for an act of which he or she is actually innocent.

<u>Maybeck</u>, 23 F.3d at 893 (emphasis added). **2** Appellees' situation falls squarely into the logic of this passage.

Although <u>Maybeck</u> contains no language limiting its holding to erroneous career offender enhancements, the majority balks at applying <u>Maybeck</u> here. The majority says that it must limit <u>Maybeck</u> because to do otherwise would effectively ignore the cause prong of the cause-and-prejudice standard. <u>See ante</u> at 7. I do not share the majority's concerns. The Supreme Court has established that when the prejudice is so severe as to be fundamentally unjust -- i.e., the defendant is convicted, <u>see Murray v. Carrier</u>, 477 U.S. at 496, or sentenced, <u>see Sawyer v. Whitley</u>, 505 U.S. 333, 336 (1992), when he is actually not guilty of that conviction or sentence -- a prisoner need not show cause. That is why the Supreme Court created the actual innocence exception**3** as an alternative to, not a subset of, the cause and prejudice standard. <u>See</u>, e.g., <u>Schlup</u>, 513 U.S. at 320.

The issue, then, is not whether the actual innocence exception swallows the cause and prejudice rule, since they are entirely sepa-

---

**2** In <u>Schlup</u>, the Supreme Court indicated that the actual innocence exception is applicable to sentence enhancements. The Court noted that in <u>Sawyer</u>, it had applied the actual innocence exception to one of the elements of the offense. The court distinguished <u>Sawyer</u>, by reasoning, "Though formulated as an element of the offense .. ., the arson <u>functioned essentially as a sentence enhancer</u>." <u>Schlup</u>, 513 U.S. at 326 (emphasis added). Since the <u>Schlup</u> Court did not disapprove of this application of the actual innocence exception, the Court implicitly approved of its application to sentence enhancers.
**3** The word "exception" here does not indicate an exception to the cause and prejudice rule. Both the actual innocence exception and the cause and prejudice rule are separate exceptions to the procedural default doctrine.

13

rate; rather the issue is whether one believes that it is fundamentally unjust to keep a prisoner in jail for one year or four years longer than the correct sentence dictated by the Sentencing Guidelines. When the issue is properly framed, it becomes clear that the majority has no logical or conceptual basis to limit Maybeck. The Maybeck panel held that it was a fundamental miscarriage of justice to require a defendant to serve time under sentencing provisions of which he was actually innocent. I agree with that holding. The best that the typical habeas petitioner can claim is that in the absence of the error, a different result was likely. Appellees, like the petitioner in Maybeck, can claim a much more serious prejudice -- because of the error each Appellee will with a certainty be serving a long period of time in jail which is undeserved under our current sentencing system. **4** I can see no difference from the standpoint of fairness and justice between a petitioner who wrongly remains incarcerated based on an erroneous career offender sentence enhancement and a petitioner who wrongly remains incarcerated based on an erroneous restraint of the victim sentence enhancement. Nor does the majority offer one.

It is true that the trend in Supreme Court habeas cases has been to emphasize finality over the correction of errors. See, e.g., Sawyer v. Whitley, 505 U.S. at 338; McCleskey v. Zant , 499 U.S. 467, 490-91 (1991); Teague v. Lane, 489 U.S. 288, 316 (1989);**5** Wainwright v.

_____

**4** The government argues that Appellees were only potentially prejudiced by the district court's error. The Government asserts that Appellees benefitted substantially from their plea agreements: even with the sentencing error, Appellees face terminable sentences rather than the life without parole they would have faced absent a guilty plea. This argument is not persuasive. The government never contended that its agreement to accept Appellees' guilty pleas was in any way contingent upon the court granting an upward adjustment under § 3A1.3. For both Appellees, the government left the final determination of the appropriate sentence up to the district judge. Had the district court applied§ 3A1.3 correctly, then under the terms of the plea agreements, Appellees would have obtained the sentences which they are now seeking.

**5** I take this time to note that Teague is inapplicable to the case at bar. We have already held with persuasive force that Teague does not bar the retroactive application on collateral review of a decision concerning the reach of a sentencing guideline. See United States v. McLamb, 77 F.3d

<u>Sykes</u>, 433 U.S. 72, 87 (1977). However, at the same time the Court has been narrowing the availability of the writ, it has been expanding the fundamental miscarriage of justice standard. This doctrine was first held to be applicable to procedurally defaulted claims in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). It was extended to cover sentencing error in <u>Sawyer v. Whitley</u>, 505 U.S. 333, 340-341 (1992). Most recently the burden of proof was relaxed for certain cases in <u>Schlup v. Delo</u>, 513 U.S. 298, 323-324 (1995). **6** So, once again, the focus of the inquiry is not on policy-based finality issues; the inquiry is whether a fundamental miscarriage of justice is afoot. In a different context, we have stated:

_____

472, 1996 WL 79438, at **3 n.4 (4th Cir. 1996) (unpublished table disposition). <u>See supra</u> n.1. Judge Niemeyer concurred in this opinion. <u>See id.</u> at **5 (Niemeyer, J., concurring). This holding was in accord with the general understanding that "<u>Teague</u> stands for the proposition that new constitutional rules of criminal <u>procedure</u> will not be announced or applied on collateral review." <u>Lockart v. Fretwell</u>, 506 U.S. 364, 372 (1993) (emphasis added). <u>Teague</u> does not apply to the "retroactive application of a substantive non-constitutional decision concerning the reach of a federal statute." <u>United States v. McClelland</u>, 941 F.2d 999, 1001 (9th Cir. 1991). <u>See also Oliver v. United States</u>, 90 F.3d 177, 179 (6th Cir. 1996); <u>United States v. Dashney</u>, 52 F.3d 298, 299 (10th Cir. 1995). <u>Cf. United States v. Bonnette</u>, 781 F.2d 357, 362-64 (4th Cir. 1986) (pre-<u>Teague</u> decision allowing habeas challenge based on subsequent decision narrowing substantive criminal statute). <u>But see Boyer v. United States</u>, 55 F.3d 296, 299 (7th Cir. 1995).

**6** Further, finality and judicial efficiency concerns are significantly reduced when dealing with sentencing error. Finality concerns are low because relief on habeas will only result in the correction of the sentence, not in the release of the defendant or in a new trial. A petitioner's conviction at trial -- "the paramount event," <u>Herrera v. Collins</u>, 506 U.S. 390, 416 (1993), in which society's resources have been concentrated, <u>see id.</u> at 401 -- is undisturbed. Similarly, judicial efficiency concerns are low because sentencing is a more informal and limited process than is retrial. Often, correcting an erroneous sentence will require only mechanical application of the Sentencing Guidelines. Finally, because the Sentencing Guidelines only apply in federal cases, we need not worry about comity issues.

15

> [S]entencing a defendant at the wrong guideline range seri-
> ously affects the fairness, integrity, and public reputation of
> the judicial proceedings. If we do not correct this error, Reid
> will serve a term of imprisonment three years longer than
> required by the sentencing guidelines. We cannot casually
> ignore this fact because of an overly-strict adherence to
> technical requirements. Three years of a man's life is not a
> trifling thing. No court of justice would require a man to
> serve three undeserved years in prison when it knows that
> the sentence is improper.

United States v. Ford, 88 F.3d 1350 (4th Cir. 1996). In my view, there is no doubt that Appellees have shown a fundamental miscarriage of justice.

Having concluded that the actual innocence exception should apply to Appellees, it is clear that they have made the required showing. The Supreme Court recently clarified that there are three different standards of review under the actual innocence "gateway." See Schlup, 513 U.S. at 313-317, 321-329. Since Appellees have alleged error at their sentencing, i.e., that their "sentence[s] [are] too severe," the appropriate standard of review is that articulated in Sawyer v. Whitley, 505 U.S. at 336: Appellees must show by clear and convinc- ing evidence that but for the error, petitioners would have been ineli- gible for the penalty which they received.[7] See Schlup, 513 U.S. at 325-26 & 326 n.44. Here, but for the erroneous application of the § 3A1.3 enhancement, Appellees would have been ineligible for the sentences which they received.

_____

[7] This standard encompasses the court's observation in Maybeck that the actual innocence exception is not available when the petitioner was not prejudiced by the inclusion of the enhancement. Maybeck, 23 F.3d at 894. See also Smith v. Collins, 977 F.2d 951, 959 (5th Cir. 1992) (actual innocence exception would only be available if but for the error the petitioner would not have been legally eligible for the sentence he received).

16

IV.

In my view, once a defendant satisfies the actual innocence standard, he has also cleared the "complete miscarriage of justice" hurdle which governs § 2255 relief for non-constitutional, non-jurisdictional claims, see United States v. Addonizio, 442 U.S. 178, 185 (1979). As the majority opinion shows, see ante at 4, and Supreme Court opinions confirm, the actual innocence doctrine is based on a "fundamental miscarriage of justice" standard. See, e.g., Schlup, 513 U.S. at 320-21; Herrera v. Collins, 506 U.S. 390, 404 (1993); Sawyer v. Whitley, 505 U.S. at 339; Murray v. Carrier, 477 U.S. at 496. Thus, any prisoner who meets the actual innocence standard also meets the complete miscarriage of justice standard, warranting § 2255 relief.[8]

Further, because Appellees suffer from an error in applying the substantive law of punishment, rather than mere procedural error, Supreme Court precedent indicates that the complete miscarriage of justice standard is fulfilled. There have been five cases dealing with non-constitutional, non-jurisdictional errors. All four of the cases in which the Supreme Court rejected habeas relief involved errors of a procedural nature. See Reed v. Farley, 512 U.S. 339, 349-50 (1994) (failure to comply with statutory 120 day limit to commence trial); Addonizio, 442 U.S. at 184-90 (subsequent change in U.S. Parole Commission's policies); United States v. Timmreck, 441 U.S. 780, 784-85 (1979) (error under Fed. R. Crim. P. 11 in procedure for taking a guilty plea); Hill v. United States, 368 U.S. 424, 428 (1962) (denial of allocution at sentencing in violation of Fed. R. Crim. P. 32(a)). The case in which the Supreme Court granted relief involved a change in the substantive law. See Davis v. United States, 417 U.S. 333 (1974). In that case the Supreme Court found cognizable on a § 2255 motion the non-constitutional claim that a subsequent decision had narrowed a substantive statute, making it inapplicable to the defendant. As the Supreme Court later explained Davis, "To have refused to vacate his sentence would surely have been a `complete miscarriage of justice,' since the conviction and sentence were no longer lawful." Addonizio, 442 U.S. at 187. See also United States v. Bonnette, 781 F.2d 357, 363-64 (4th Cir. 1986) (complete miscarriage

_____

[8] I cannot see any meaningful difference between the words "fundamental" and "complete" in this context.

17

of justice standard satisfied if defendant "convicted under an erroneous interpretation of the law").

Error in applying the Sentencing Guidelines is more like the substantive error at issue in Davis than it is like the procedural error in the other non-constitutional error cases. Much of the Supreme Court's jurisprudence limiting the availability of the Great Writ was crafted in an era before the Sentencing Guidelines. The Supreme Court has not yet considered the nature of Sentencing Guidelines error in the context of habeas relief. In my view, the Sentencing Guidelines effectively serve as substantive laws of punishment. The Sentencing Guidelines have replaced the traditional discretion of district courts with formulaic precision, allowing deviations in only limited situations. Because of the very narrow role left to district judges, it is effectively as if there had been two crimes here-- one establishing the crime of second degree murder with a penalty range of 168-210 (135-168) months, the other establishing the crime of second degree murder aggravated by restraint of the victim with a penalty range of 210-262 (168-210) months. If, in such a case, the defendants were convicted of the more serious offense, and a subsequent decision clarified that their acts did not amount to that crime, then the case would be controlled by Davis. The situations are distinguishable -- the Sentencing Guidelines define sentences, not the elements of crimes. Nevertheless, the injustice is the same -- an enhanced sentence "from being held responsible for an act of which he or she is actually innocent," Maybeck, 23 F.3d at 893. And it is just this type of injustice for which the Supreme Court granted relief in Davis and for which we granted relief in Maybeck.

The cases cited by the majority holding to the contrary simply have framed the question incorrectly. In their view, the question is whether an "ordinary" error in applying the Sentencing Guidelines creates a complete miscarriage of justice. The real issue, though, is whether it is a complete miscarriage of justice to keep a defendant imprisoned beyond the defendant's correct sentence. I think the answer is clear. "[J]ustice consists not only of convicting the guilty, but also of assigning them a lawful and just punishment." United States v. Tayman, 885 F. Supp. 832, 844 (E.D. Va. 1995)."No court of justice would require a man to serve [four] undeserved years in prison when it knows that the sentence is improper." Ford , 88 F.3d at 1356.

18

V.

The crimes were not ones recommending lenience in sentencing. Nor, however, are the additions of 52 months and 12 months provided for. We frequently reject erroneous attempts to secure improper sentencing reductions. But here the question is just the opposite one. It involved a justifiable and correct attempt to secure reduction of the improper lesser portions of the sentencing imposed, recognized to be so by the district judge.

The government seeks just sentences not improper ones. It successfully insists on remand for increases of sentence when to do so would lead to the correct and proper result. The country works well when correction is required to insure the proper result, whether correction would lead to lessening or increasing the sentence imposed. That would insure equal treatment, i.e., justice applicable to all subject to criminal punishment.

Accordingly, I respectfully dissent and regret the result reached by my colleagues which I do not believe is required or in the fairest interests of the country.

19