[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12513
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2010
JOHN LEY
CLERK

D.C. Docket  Nos. 99-02054-CT-30-TGW
95-00311-CR-T-3


EZELL GILBERT,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 21, 2010)

Before DUBINA, Chief Judge, MARTIN and HILL, Circuit Judges.

HILL, Circuit Judge:

Ezell Gilbert was sentenced for a crack cocaine offense in 1997. His sentence was enhanced based upon a finding by the district court that he was a career offender under the Sentencing Guidelines. He filed the instant motion to vacate his sentence which the district court denied. For the following reasons, we reverse, vacate Gilbert's sentence and remand for re-sentencing and other appropriate action.

I.

Ezell Gilbert was indicted for possession with intent to distribute both crack cocaine and marijuana in 1995. He plead guilty to both counts. His base offense level of 32 was calculated pursuant to U.S.S.G. § 2D1.1, for which the range of imprisonment at the time of sentencing was 151-188 months. At the government's request, however, he was classified as a career offender under U.S.S.G. § 4B1.1, based on two prior convictions – one for possessing with intent to sell crack cocaine and a second for carrying a concealed firearm. As a career offender, Gilbert's sentencing range was increased to 292-365 months.[1] At his sentencing

---

[1]As a career offender, Gilbert was assigned an offense level of 37, and his criminal history was enhanced to category VI. He received a two-level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 35. Under the then-mandatory Sentencing Guidelines, his range of imprisonment was 292 to 365 months.

hearing, Gilbert objected to the application of the career offender guideline, specifically arguing that his prior conviction for carrying a concealed weapon was not a "crime of violence" as defined in § 4B1.2. The district court ordered briefing on the issue. At the subsequent re-convening of the hearing, the district court announced it believed that even the minimum 292-month career offender sentence was "too high," but that it was without discretion under the then-mandatory Sentencing Guidelines to impose a lesser sentence. The court said:

> The fact that I think the sentence is too high is immaterial. . . . I don't see any authority under the law for me to downwardly depart. So, counsel, I have given you reversible error if you can convince the Eleventh Circuit that I'm wrong.
>
> *   *   *
>
> If I'm wrong, they will correct it. Because if I could do it legally, I would. I don't think I can. The U.S. Attorney tells me I can't Probation tells me I can't, so I don't think I can even though I would if I could. So, there's grounds for appeal to reverse me, if you can find it.

Gilbert was sentenced to 292 months' imprisonment.[2]

Gilbert appealed his sentence. On appeal, he argued that he was inappropriately categorized as a career offender because carrying a concealed firearm was not an offense that would qualify as a crime of violence under the

---

[2]He was also sentenced to 120 months' imprisonment for the marijuana offense, to run concurrently with the crack cocaine sentence.

career offender provisions of the guidelines. In affirming his sentence, we held, as a matter of first impression, that "carrying a concealed weapon in violation of Florida law is a 'crime of violence' under U.S.S.G. §4B1.2." *United States v. Gilbert*, 138 F.3d 1371, 1372 (11th Cir. 1998). Gilbert filed a petition seeking a rehearing of this determination and for rehearing *en banc*, but we denied relief. *United States v. Gilbert*, 156 F.3d 188 (11th Cir. 1998) (table). Gilbert filed a petition for writ of certiorari to the United States Supreme Court, seeking review of his enhancement as a career offender, but this too was denied. *United States v. Gilbert*, 526 U.S. 1111 (1999).

In 1999, Gilbert filed a *pro se* motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. The district court denied the motion and both the district court and we denied him a certificate of appealability. Gilbert continued serving his sentence, all paths to relief now exhausted by him.

In 2008, the Supreme Court decided the question of what sort of prior convictions permit enhancement under the Armed Career Criminal Act (the "ACCA") of federal felon-in-possession sentences. *See* 18 U.S.C. § 924(e)(B)(ii). The ACCA, like § 4B1.2 of the Sentencing Guidelines, permits enhancement of the underlying sentence where the defendant has prior convictions for a "violent

felony.["3]  In *Begay v. United States*, 128 S. Ct. 1581 (2008), the Court held that the term "violent felony" applies only to crimes that are "roughly similar, in kind as well as in degree of risk posed, to the examples [in the ACCA] themselves." *Id.* at 1585.  The Court explained that the crimes listed in the ACCA all required "purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 1586.  The Court rejected a broader interpretation of "violent felony" as inconsistent with Congress' intent in the ACCA to identify those individuals who, having previously committed purposeful, violent, and aggressive crimes, are more likely to "deliberately point the gun and pull the trigger" in the future. *Id.* at 1587-88.

That same year, in *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008), we applied the *Begay* analysis to reverse our prior holding, in Gilbert's own case, that carrying a concealed firearm is a crime of violence under the career offender sentencing guideline, § 4B1.2.  We said that carrying a concealed firearm "does not involve the aggressive, violent conduct that the Supreme Court noted is inherent in the enumerated crimes." *Id.* at 1351.  Accordingly, we abrogated *Gilbert* under the authority of *Begay*, and held that "the crime of carrying a concealed firearm may no longer be considered a crime of violence under the

---

[3]We have held that the definition of a "crime of violence" under the Sentencing Guidelines and a "violent felony" under the ACCA are "virtually identical." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  We shall use the terms interchangeably.

Sentencing Guidelines." *Id.* at 1352.

Later that same year, the United States Sentencing Commission published Amendment 706, which provides a two-level reduction in base offense levels for crack cocaine offenses. The Commission made Amendment 706 retroactive.

In response to these developments in the law, the district court in this case *sua sponte* ordered the parties to file responses regarding Gilbert's eligibility for a sentence reduction. The government responded that Gilbert was not eligible for an Amendment 706 reduction because he was sentenced pursuant to the career offender guideline, not the crack cocaine guideline to which the amendment applies. The government further argued that Gilbert was not entitled to any relief from his career offender status – under *Begay* and *Archer* – because any such motion would be a successive one under 28 U.S.C. § 2255, and, therefore, disallowed in the absence of a new constitutional rule. *See* § 2255(h).[4] Since *Begay* announced only a new rule of statutory construction, the district court reluctantly agreed, stating:

> Unfortunately, Mr. Gilbert is in the unenviable position of having to remain in prison even though under the present interpretation of the law he is no longer deemed a career offender and has served the time

_____

[4]Section 2255(h) permits a second or successive motion only when there is (1) newly discovered evidence that would have led to a not-guilty verdict or (2) a new rule of constitutional law made retroactive by the Supreme Court that was previously unavailable.

that would be required of him were he sentenced today.  Salt to the wound is that he legally challenged the very issue that now incarcerates him – but lost.  It is faint justice to tell him now that he was right but there is no legal remedy.  Having exhausted all avenues known to the court, the Court determines that at this time it is unable to provide relief to Mr. Gilbert under the law as it currently exists.

In 2009, Gilbert filed a "Motion to Reopen and Amend First 28 U.S.C. § 2255 Motion."  To avoid the successive motion bar, he requested permission to reopen his first § 2255 motion to include a challenge to the career offender enhancement.  The government opposed the motion, arguing no relief was available.  Gilbert replied that the district court could treat the motion as one for relief under § 2241, pursuant to the savings clause of § 2255, under the authority of *Wofford v. Scott*, 177 F.3d 1236 (11th Cir. 1999) and the doctrine of "actual innocence."  The district court denied Gilbert's motion, holding that his claim did not meet the *Wofford* requirement of a conviction for a nonexistent offense.  The district court granted Gilbert a certificate of appealability on this issue.[5]

At the time of this writing, Gilbert has served 171 months in prison.  Without the career offender enhancement, Gilbert's then-mandatory Sentencing Guidelines range of imprisonment at the time of sentencing would have been 151-

[5]The district court also certified whether Gilbert's Rule 60(b) motion was a successive Section 2255 motion.  For the purposes of resolving the applicability of the savings clause, we have assumed that this is so.

188 months. Furthermore, had he not been sentenced as a career offender, under Amendment 706 to the Sentencing Guidelines, he might now be entitled to a two-level reduction in his offense level, resulting in a Guideline range of imprisonment of just 130-162 months, making him eligible for immediate release.[6]

The government's position, however, is that, despite the error in his sentence, Gilbert is without a legal remedy, his sentence must stand, and he must remain incarcerated. Although made in good faith and based upon its understanding of the law, the government's statement at oral argument that Gilbert is entitled to no relief from an illegal sentence cannot be the law. The common law tradition of the "Great Writ" cannot be so moribund, so shackled by the chains of procedural bars and rigid gatekeeping that this court is not authorized to grant relief to one who is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S. C. § 2241. *Fiat Justitia, Ruat Coelum.*[7]

II.

Section 2255 permits a federal prisoner to collaterally attack his conviction

---

[6]The Sentencing Commission made Amendment 706 retroactively applicable, effective March 3, 2009.

[7]"Let right be done, though the heavens should fall." Branch. Princ. 161.

or sentence.[8]  It substitutes attack by motion for the common law petition for writ of habeas corpus, which was accorded federal prisoners in the initial Judiciary Act of 1789, and is now codified at 28 U.S.C. § 2241.  In 1996, the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), amended § 2255 to prevent the filing of a second or successive motion challenging a federal conviction or sentence.  The purpose of the statute was to achieve finality in convictions by barring successive and abusive collateral attacks.  In this endeavor, the statute has been quite successful.

We have recognized, however, that, under certain circumstances, the withdrawal of all judicial review from a successive motion under § 2255 may raise serious constitutional issues.  *Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999).  We noted that where a petitioner has a claim that goes to the fundamental legality of his conviction and sentence, and for which he has had no prior opportunity to obtain a reliable judicial determination, serious constitutional issues might arise if the successive motion bar in § 2255  foreclosed all relief.  *Id.*  We read the "savings clause" of § 2255 – permitting traditional habeas relief by

_____

[8]Section 2255 was enacted in 1948, to reduce the burden on federal courts in districts where large federal prisons were located by requiring the attack to be filed in the sentencing court rather than a court in the district where the prisoner is incarcerated, as in traditional habeas corpus proceedings.

petition under § 2241 when it "appears that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of [the federal prisoner's] detention," – as saving § 2255 from such serious constitutional problems. *Id.* at 1241 (quoting § 2255). We said, however, that it is only in the rare case that a confluence of events will operate to render § 2255 "inadequate or ineffective" to test the legality of a detention, thus opening the portal to § 2241 review of a barred successive § 2255 claim. We held that the savings clause of § 2255 applies to an otherwise barred claim when:

> 1) That claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

*Id.* at 1244.

We formulated this test after reviewing the decisions of several of our sister circuits examining the applicability of the savings clause to cases where a new rule of statutory construction would afford relief for an otherwise foreclosed claim. In *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court narrowed the "use" prong of 18 U.S.C. § 924(c)(1), which punishes anyone who *uses* or carries a firearm during or in relation to a drug trafficking crime. The Court held that the

10

statute requires an active use of the firearm in the commission of the drug trafficking crime, not mere possession of it. 516 U.S. at 150. Afterward, federal defendants who had been convicted for mere possession challenged their convictions, asserting they had been convicted for a "nonexistent crime." Three of our sister circuits held that the savings clause applied to permit claims of such a fundamental defect in a conviction to be brought under § 2241, even though they might otherwise be barred under § 2255. *See In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998); *Triestman v. United States*, 124 F.3d 361, 363 (2d Cir. 1997); *In re Dorsainvil*, 119 F.3d 245, 248 (3d Cir. 1997).

The Seventh Circuit, in *Davenpor*t for example, noted that the Supreme Court has long made clear that even non-constitutional claims are cognizable on collateral attack where the petitioner alleges a "fundamental defect which inherently results in a complete miscarriage of justice." 147 F.3d at 609 (citing *Davis v. United States*, 417 U.S. 333, 346 (1974), quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)). In *Davis*, the petitioner sought to collaterally attack his conviction, contending that a subsequent interpretation of the statute under which he was convicted established that his conviction was for "an act that the law does not make criminal." *Id.* at 346. The Supreme Court held that there could be "no room for doubt that such a circumstance 'inherently results in a complete

11

miscarriage of justice.'" *Id.* at 346-47. In applying this rule to the *Bailey* claim before it, the Seventh Circuit held that where a petitioner asserts that his conviction and sentence are for an act that the law does not make criminal, and where the petitioner has had and continues to have no reasonable opportunity to obtain judicial correction of so fundamental a defect, that § 2255 could fairly be said to be inadequate and its savings clause would permit habeas review under § 2241. 147 F.3d at 611.

In *Wofford*, we too held that an assertion of a fundamental defect in a conviction or sentence accompanied by no prior or present opportunity for review and correction triggers § 2255's savings clause. 177 F.3d at 1244-45. But we said then that only a claim raised under a "circuit law busting, retroactively applicable Supreme Court decision," would be sufficient to pull this trigger. *Id.* at 1245. Since Wofford's sentencing claims were not based on a such a Supreme Court decision, we left for another day the question of what sort of sentencing claim might do. *Id.* at 1244-45. It appears that day has come.

1.     Gilbert's *Begay/Archer* claim satisfies the Wofford test

Gilbert's *Begay/Archer* claim does not assert mere factual error in the

12

application of the sentencing guidelines.[9]  His claim is like a *Bailey* claim in that it asserts error of fundamental dimension– enhancement of his sentence based upon a nonexistent offense.  Under *Wofford*, such a claim is entitled to collateral review if it is 1) based upon a retroactively applicable Supreme Court decision; 2) which establishes that the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed it at the time it should have been or was brought. *Id.* at 1244.

A.  *Begay* is a "circuit law busting, retroactive Supreme Court decision."

In this case, despite some legal hemming and hawing, the government ultimately concedes that *Begay* and *Archer* apply retroactively and that circuit law squarely foreclosed a claim based upon them when Gilbert presented it to every available court.[10]  We agree.

B.  *Begay* establishes that Gilbert was convicted for a nonexistent offense.

The district court found Gilbert to be a career offender.  After *Begay* and *Archer*, however, it is clear that he is not now, nor has he ever been a career offender.  Under § 4B1.2, a career offender is one with two prior violent felonies.

---

[9]The government is correct that such errors do not assert a fundamental defect justifying collateral review.  *Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998).  Such errors are corrigible on direct appeal.  *Id.*

[10]The government's concessions may be found at pages 17, 35, and 37 of its brief.

Gilbert has now, and has only ever had, one prior violent felony. His sentence was enhanced, therefore, based upon a nonexistent offense – being a career offender with only one prior violent felony. Like the petitioner in *Davis*, he was sentenced for "an act that the law does not make criminal." There can be no doubt that such a defect calls into question the fundamental legality of Gilbert's conviction and sentence.[11]

But the government says that Gilbert has no *Wofford* remedy because he was not "convicted of a nonexistent offense." We disagree. Whatever the merits of this argument in the non-career-offender context, it has no application here.

For federal sentencing purposes, the act of being a career offender is essentially a separate offense, with separate elements (two felony convictions; for violent felonies), which must be proved, for which separate and additional punishment is provided. Gilbert remains in jail today because he was found guilty of the "offense" of being a career offender.

---

[11]In fact, the defect may be of constitutional dimensions, since the right not to be imprisoned for a nonexistent offense is probably inherent in the modern interpretation of substantive due process. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001) (due process violation to continue to incarcerate state prisoner after state supreme court ruled that conduct defendant had committed did not constitute a crime). The Supreme Court did not merely change the law under which Gilbert was sentenced; it resolved an open question regarding the meaning of "violent felony" under the ACCA, and by implication the career offender guideline, which made clear that Gilbert, who was adjudicated prior to that resolution, was enhanced based upon a nonexistent offense – being a career offender with only one prior violent felony. *See Davenport*, 147 F.3d at 611.

The Supreme Court has recognized that the enhancement of a non-capital sentence to a capital one based upon proof of statutory "aggravating factors" also establishes a separate "offense," and raises the possibility that a defendant might be "actually innocent" of that offense. *Sawyer v. Whitley*, 505 U.S. 333 (1992). The Court recognized that, where review of such a claim is barred, the defendant would have no remedy for a fundamentally defective sentence. In making an exception for an otherwise barred claim where the petitioner asserts that he is "actually innocent" of the aggravating factors that permit a capital sentence, the Court said that there must be review in the case where the petitioner claims he is actually "innocent of death." *Id.* at 341.

Similarly, Gilbert is actually "innocent of death" – of the aggravating factors – two prior violent felonies – that permit the enhancement of his sentence. As *Begay* and *Archer* made clear, Gilbert did not have two prior violent felony convictions when he was adjudicated a career offender. Accordingly, he is innocent of the statutory "offense" of being a career offender (having two prior violent felonies) and was sentenced, in part, for a nonexistent offense – being a career offender with only one prior violent felony.

Two of our sister circuits have recently extended *Sawyer's* reasoning about capital sentences to the career offender context and held that where a petitioner

15

can demonstrate that he is actually innocent of being a career offender, the petitioner is entitled to review of his sentence. *See Haley v. Cockrell*, 306 F.3d 257, 264 (5ᵗʰ Cir. 2002), vacated sub nom. *Dretke v. Haley*, 124 S. Ct. 1847; *United States v. Maybeck*, 23 F.3d 888, 893-94 (4ᵗʰ Cir. 1994); *United States v. Mikalajunas*, 186 F. 3d 490, 496 (4ᵗʰ Cir. 1999).[12] The Second Circuit has extended such review to all non-capital sentences. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162 (2d Cir. 2000).

In extending the actual innocence exception to non-capital sentences, the Fourth Circuit said that "we see little difference between holding that a defendant can be innocent of the acts required to enhance a sentence in a death case and applying a parallel rationale in non-capital cases." *Maybeck*, 23 F.3d at 893. The court went on:

> In capital sentencing cases, the jury has determined guilt, and when aggravating factors are present, the sentence is enhanced to one of death. In non-capital enhancement cases, the length of a defendant's sentence may be aggravated by factors specified by the statute or the Guidelines. Hence, a defendant in either a capital or non-capital case would unless excepted from the [procedural bar] suffer the same general consequence (an enhanced sentence) from being held responsible for an act of which he or she is actually innocent.

---

[12]Although *Haley* was vacated on other grounds, there is no reason to believe the Fifth circuit has changed its views on the application of the actual innocence exception to bars on non-capital sentencing review.

16

*Id.* at 893.

The Fifth Circuit in *Haley* agreed with the Fourth that colorable assertions of actual innocence apply to permit review of barred sentencing claims in the career offender context because the "fundamental purpose" of habeas corpus is to see that "constitutional errors do not result in the incarceration of innocent persons." 306 F.3d at 265 (apparently assuming that an illegal career offender enhancement would rise to a constitutional level). We agree.

Gilbert's enhancement for being a career offender with only one prior violent felony satisfies the *Wofford* requirement for a conviction for a nonexistent offense. To accept the government's position that the law provides Gilbert no remedy for the clear wrong that has been done him is to elevate form so far over substance as to make unrecognizable the concept of fair play and due process. The remedy is review under § 2241 in the very limited circumstances approved by *Wofford*, which we hold are present in this case – a *Begay/Archer* claim of unlawful sentence enhancement based on a non-qualifying prior conviction.[13]

2. <u>Gilbert is entitled to relief under § 2241 from his enhanced sentence because he is actually innocent of his sentence enhancement and his</u>

---

[13]We reject the government's contention that this rule will open the proverbial "floodgates" to collateral attack on sentences. The rule we formulate here today is applicable only in the rare circumstance of a retroactive Supreme Court decision that overturns clear circuit precedent and which establishes that the petitioner is serving an unlawful sentence. When these circumstances are present, relief is due.

17

<u>continued incarceration for the illegal enhancement is a miscarriage of justice.</u>

Turning now to the merits of Gilbert's § 2241 claim, we find as a matter of fact that Gilbert is actually innocent of his sentence enhancement, as required for relief. *See Wofford*, 147 F.3d at 1245 ("Once the savings clause of § 2255 applies to open the portal to a § 2241 proceeding, the proper inquiry in that § 2241 proceeding will be whether the petitioner can establish actual innocence of the crime for which he has been convicted") (citing *Bousley v. United States*, 523 U.S. 614 (1998), requiring factual innocence, not legal insufficiency). Gilbert is factually innocent of the legal requirement for such an enhancement – two prior violent felonies. He has only one.

Furthermore, there is no doubt that Gilbert's present incarceration is the result of the enhancement of his sentence for this nonexistent offense. The district judge stated on the record in this case that, after he had adjudicated Gilbert to be a career offender, he was counseled by the government and probation that he had no choice under the then-mandatory Sentencing Guidelines but to enhance Gilbert's sentence under the career offender guideline, which provided for a minimum of 292 months incarceration. The maximum sentence Gilbert could have received for his underlying drug conviction was 188 months – over 8 ½ years less. Gilbert,

18

therefore, necessarily would have received a significantly lower sentence absent the career offender enhancement. *See Maybeck*, 23 F.3d at 894 (finding prejudice under this circumstance).[14] Further, Gilbert may be entitled to an amended guideline range of 130-162 months under Amendment 706 after his career offender status is vacated. Since he has already served over 171 months, he is, in a very real sense, presently serving his illegal enhancement. Such a complete miscarriage of justice entitles him to relief. *See Burke,* 152 F.3d at 1331-32.

## III.

The animating principle underlying the writ of habeas corpus is fundamental fairness. *Engle v. Isaac*, 456 U.S. 107, 126 (1982). Even as substantial roadblocks to collateral review of procedurally barred claims have been erected, the Supreme Court has consistently recognized that exceptions to these rules of unreviewability must exist to prevent violations of fundamental fairness. *Id.* at 135. The principle of finality "must yield to the imperative of correcting a fundamentally unjust incarceration." *Id.* Gilbert's sentence enhancement for a nonexistent offense was fundamentally defective and his incarceration for that enhancement is a miscarriage of justice. He is entitled to relief under § 2241.

---

[14]The difference in sentences without the enhancement could have been as much as 11 ¾ years.

Accordingly, his sentence is due to be vacated and he is to be resentenced without the career offender enhancement and with the benefit of any other reduction to which, as a result, he may be entitled.

SENTENCE VACATED AND REMANDED FOR RESENTENCING.

MARTIN, Circuit Judge, concurring:

I fully concur in the majority's conclusion that § 2255's savings clause applies and that Mr. Gilbert's sentence and continued incarceration as a career offender constitutes a fundamental miscarriage of justice entitling him to habeas relief under 28 U.S.C. § 2241. I write separately only to note that the savings clause also applies because Mr. Gilbert's sentencing claim is "based upon a retroactively applicable Supreme Court decision overturning circuit precedent." Wofford v. Scott, 177 F.3d 1236, 1244–45 (11th Cir. 1999). Mr. Gilbert is entitled to habeas relief because, on the extraordinary facts of this case, the error represents a "'fundamental defect which inherently results in a complete miscarriage of justice'" and this case "'present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'" Davis v. United States, 417 U.S. 333, 346, 94 S. Ct. 2298, 2305 (1974) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962)); Burke v. United States, 152 F.3d 1329, 1331–32 (11th Cir. 1998).