**Courtney Floyd GREGORY, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. CIV. A. 4:99CV136.
No. CR. A. 4:96CR22.

United States District Court,
E.D. Virginia,
Newport News Division.

Aug. 4, 2000.

---

Courtney Floyd Gregory, Lewisburg, PA, pro se.

Michael Smythers, U.S. Attorney's Office, Norfolk, VA, for defendant.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on Petitioner's *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence previously imposed. For the reasons set forth below, Petitioner's motion is **DENIED**.

1. Petitioner filed a motion to amend, along with an amendment to his § 2255 motion, on November 10, 1999. The Court considers both Petitioner's original motion and his amendment.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Courtney Gregory and three co-defendants were indicted by a federal grand jury on April 29, 1996. Petitioner pleaded not guilty and, on September 9, 1996, a jury found him guilty of one count of conspiracy to distribute marijuana, cocaine, and cocaine base in violation of 21 U.S.C. § 846. On January 21, 1997, Petitioner was sentenced to life imprisonment, five years of supervised release, and a $100 special assessment.

Petitioner appealed, and on June 23, 1998, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed Petitioner's conviction and sentence in *United States v. Gregory*, 151 F.3d 1030, 1998 WL 390176 (4th Cir. June 23, 1998) (unpublished), *cert. denied*, 525 U.S. 974, 119 S.Ct. 429, 142 L.Ed.2d 349 (1998). The United States Supreme Court denied Petitioner's Petition for Certiorari by Order filed November 2, 1998.

Petitioner filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on November 9, 1999.[1] He claims that (1) his attorneys' failure to allow him to testify on his own behalf constitutes ineffective assistance of counsel; (2) his attorneys were ineffective for failing to investigate his case and for failing to file a motion to suppress; (3) since the general verdict failed to identify the jury's finding as to the object of the conspiracy, his conviction must be vacated and remanded for a new trial; in the alternative, he must be resentenced based on the drug carrying the lowest penalty; and (4) his attorneys were ineffective for failing to request a special verdict and for failing to raise plain error—the absence of a special verdict—on direct appeal.[2] The United States Attorney filed a response to Petitioner's § 2255 motion on January 31,

2. To facilitate analysis, the Court has regrouped and renumbered Petitioner's claims.

2000, and Petitioner filed his "Traverse" to the Government's Response on February 14, 2000. The matter is now ripe for judicial decision.

## II. LEGAL STANDARDS

■ On a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence, the petitioner bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *See Vanater v. Boles,* 377 F.2d 898, 900 (4th Cir.1967); *Miller v. United States,* 261 F.2d 546, 547 (4th Cir.1958). A petitioner may attack the sentence imposed on the grounds that (1) it "was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose" it; or (3) it "was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

■ When the errors asserted in a § 2255 motion were not raised at sentencing or on direct appeal, a petitioner must ordinarily satisfy the requirements of a two-part "cause and actual prejudice" test to obtain relief. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Under that test, "[t]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.; accord United States v. Maybeck,* 23 F.3d 888, 890 n. 1 (4th Cir. 1994). This standard presents "a significantly higher hurdle than would exist on direct appeal." *Frady,* 456 U.S. at 166, 102 S.Ct. 1584.

■ However, ineffective assistance of counsel claims more properly are made by way of a collateral challenge pursuant to § 2255 than on direct appeal. *See United States v. Fisher,* 477 F.2d 300, 302 (4th Cir.1973). Ineffective assistance of counsel constitutes "cause" for failure to raise an issue prior to § 2255 review. *See United States v. Breckenridge,* 93 F.3d 132, 134 n. 1 (4th Cir.1996). Thus, Petitioner's claims of ineffective assistance of counsel must be evaluated according to the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To prove his claims of ineffective assistance of counsel, Petitioner must first show that he was deprived of "reasonably effective assistance" because counsel's representation "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. Second, Petitioner must show that counsel's "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. To demonstrate prejudice, Petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Failure to satisfy either requirement defeats the ineffective assistance claim. *See id.* at 700, 104 S.Ct. 2052.

■ A *pro se* petitioner is entitled to have his petition and asserted issues construed liberally. *Pro se* petitioners are held to a less stringent standard than attorneys drafting such complaints. *See Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.1978). Accordingly, the Court has interpreted the allegations and facts as reasonably as possible.

■ In deciding a § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. If the motion is brought before the sentencing judge, the judge may rely on recollections of previous events to dismiss it. *See Blackledge v. Allison,* 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The Court has thoroughly reviewed the record in this case, and finds that a hearing is not necessary to fully address Petitioner's § 2255 motion.

## III. DISCUSSION

### A. Petitioner's Claim of Ineffective Assistance of Counsel for Failure to Allow him to Testify on his Own Behalf

Petitioner claims that his attorneys rendered ineffective assistance by refusing to allow him to testify on his own behalf at trial. In support of this claim, Petitioner has submitted an affidavit declaring that he informed his trial attorneys that he wanted to testify, that he discussed his intended testimony with his attorneys, and that, during trial, his attorneys assured him that they would call him to testify. However, they ultimately failed to call him as a witness. The Government has submitted an opposing affidavit in which Petitioner's trial attorney, Joseph DuRant, avers that he and his co-counsel, Timothy Clancy, spoke with Petitioner about testifying and discussed potential testimony, but that they did not advise him to testify. He further states that Petitioner did not insist on testifying and that they did not refuse to allow him to testify.

■ A defendant in a criminal trial has a constitutional right to testify on his own behalf. *See Rock v. Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *United States v. McMeans,* 927 F.2d 162, 163 (4th Cir.1991); *see also* 18 U.S.C. § 3481 (codifying a defendant's right to testify). Although "it is the defendant who retains the ultimate authority to decide whether or not to testify," *McMeans,* 927 F.2d at 163, it is the attorney's obligation to ensure that the defendant is informed of the right to testify. *See Sexton v. French,* 163 F.3d 874, 882 (4th Cir. 1998). A claim that counsel interfered with that right implicates the right to effective assistance of counsel. Thus, any

such claim must be evaluated according to the two-prong test set forth in *Strickland v. Washington. See id.*

■ Petitioner has failed to show prejudice resulting from the alleged deficient performance of his attorneys. Thus, even assuming that his attorneys refused to allow him to testify and that this refusal rendered them deficient under the first prong of the *Strickland* test, Petitioner's claim fails. The second prong of *Strickland* requires Petitioner to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This requires Petitioner to demonstrate that there is a reasonable probability, "sufficient to undermine confidence in the outcome," that, absent the error, the result of the trial would have been different. Merely suggesting that counsel's alleged refusal to allow him to testify may conceivably have had an effect on the trial's outcome is insufficient. *See id.* at 693–94, 104 S.Ct. 2052. However, Petitioner has failed to allege any prejudice resulting from his counsel's alleged deficiency. He states only that "there remains a reasonable probability had the petitioner been allowed to testify the outcome would have been different." Mem. Supp. Pet.'s § 2255, at 5. He fails to demonstrate how his testimony would have affected the outcome of his trial or even to indicate what his testimony would have been had he taken the stand. This is insufficient to satisfy the *Strickland* prejudice requirement. *See Foster v. Delo,* 39 F.3d 873, 877 (8th Cir.1994); *see also United States v. Tavares,* 100 F.3d 995, 998 (D.C.Cir.1996) (holding that defense counsel's denial of defendant's right to testify does not constitute prejudice *per se*).[3]

---

**3.** Moreover, the Court notes that, as the Fourth Circuit found, the record in this case "is replete with references to countless acts regarding the concerted drug distribution and weapons crimes of these defendants. Numerous witnesses and exhibits supported a finding of the existence of a conspiracy." *United*

*States v. Gregory,* 151 F.3d 1030, 1998 WL 390176, at *4 (4th Cir. June 23, 1998). Although the Court cannot attempt to assess the impact of Petitioner's testimony if he had taken the stand, the Court believes that, given the substantial evidence of Petitioner's guilt, there is no reasonable probability, sufficient

Because Petitioner has not shown prejudice resulting from the alleged denial of his right to testify, the Court finds that it need not hold an evidentiary hearing to determine whether his right to testify was in fact denied. *See McCarver v. Lee,* 221 F.3d 583, 598 (4th Cir.2000) (finding no entitlement to an evidentiary hearing because petitioner failed to demonstrate prejudice; thus establishment of additional facts would still not qualify him for relief); *Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991) (finding barebones assertion of denial of right to testify insufficient to require a hearing). Accordingly, Petitioner's claim that his attorneys were ineffective for refusing to allow him to testify is **DENIED.**

**B. Petitioner's Claim of Ineffective Assistance of Counsel for Failure to Investigate and Failure to File a Motion to Suppress**

Petitioner next argues that his attorneys were ineffective for failing to investigate his case and for failing to file a pretrial motion to suppress his statements. Both of these claims are based on Petitioner's claim that he was never informed that, as a foreign national of Jamaica, he had a right under the Vienna Convention on Consular Relations ("Vienna Convention") to contact the Jamaican consulate after he had been arrested. Article 36 of the Vienna Convention provides:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

\* \* \* \* \* \*

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 100–101, 596 U.N.T.S. 261.

*1. Failure to Investigate*

 Petitioner contends that his attorneys failed to investigate his case and thus failed to inform him of his rights under Article 36 of the Vienna Convention. He claims that this failure constitutes ineffective assistance of counsel. In support of his argument, Petitioner relies on the Fourth Circuit's statement in *Murphy v. Netherland,* 116 F.3d 97 (4th Cir. 1997), that "[t]reaties are one of the first sources that would be consulted by a reasonably diligent counsel representing a foreign national." *Id.* at 100. However, even assuming that his attorneys' failure

to undermine the reliability of the result, that the outcome of the trial would have been different if Petitioner had testified. *See Tavares,* 100 F.3d at 998–99.

to discover and to inform Petitioner of the Vienna Convention provisions constituted deficient performance under the first prong of *Strickland,* Petitioner's claim fails, since he has failed to demonstrate— or even to allege—any prejudice resulting from that deficiency.[4]

▆▆▆ Petitioner states only that if he had been represented by competent counsel, the outcome of his trial would have been fair and reliable. In order to succeed on his ineffective assistance of counsel claim, Petitioner must show both that he was deprived of reasonably effective assistance and that he was prejudiced by his attorneys' deficient performance. *See Strickland,* 466 U.S. at 700, 104 S.Ct. 2052. Although under certain limited circumstances prejudice may be presumed, "ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693, 104 S.Ct. 2052. The mere fact that his attorneys failed to inform Petitioner of the Vienna Convention provisions does not imply that the outcome of his trial was unreliable. Petitioner does not explain how contacting the Jamaican consulate would have affected the result of his trial, and the Court does not believe that the failure to contact the consulate had an adverse impact on his defense. Petitioner's own attorneys "were likely far better able to explain the United States legal system to him than any consular official would have been," *Breard v. Greene,* 523 U.S. 371, 377, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998), and Petitioner "offers no evidence that the [Jamaican] consulate could have offered any assistance that his attorney[s] did not." *Murphy,* 116 F.3d at 101. Accordingly, Petitioner's claim of ineffective assistance of counsel for failure to investigate is **DENIED.**

*2. Failure to File a Motion to Suppress*

▆▆▆ Petitioner also argues that his attorneys were ineffective for failing to file a motion to suppress statements taken in violation of Article 36 of the Vienna Convention. He contends that any statements he made should have been suppressed, since he was never informed of his right to contact the Jamaican consulate. However, Petitioner fails to demonstrate either that his counsel were deficient for failing to file a motion to suppress or that he was prejudiced by any alleged deficiency.

Although the Vienna Convention "arguably confers on an individual the right to consular assistance following arrest," *Breard,* 523 U.S. at 376, 118 S.Ct. 1352, the Fourth Circuit has not determined conclusively whether an individual has standing to assert rights under Article 36 of the Vienna Convention. *See United States v. Beckford,* 211 F.3d 1266, 2000 WL 376155, at *13 (4th Cir. May 3, 2000) (unpublished); *Murphy,* 116 F.3d at 100. Other courts confronted with the question have declined to decide the issue. *See, e.g., United States v. Lombera–Camorlinga,* 206 F.3d 882, 885 (9th Cir.2000); *United States v. Li,* 206 F.3d 56, 60 (1st Cir. 2000); *United States v. Carrillo,* 70 F.Supp.2d 854, 859 (N.D.Ill.1999); *United States v. Rodrigues,* 68 F.Supp.2d 178, 183 (E.D.N.Y.1999). However, both the Ninth Circuit and the First Circuit, as well as several lower courts, have recently held that suppression of evidence is never an appropriate remedy for a Vienna Convention violation. *See Lombera–Camorlinga,* 206 F.3d at 883–84; *Li,* 206 F.3d at 60; *Carrillo,* 70 F.Supp.2d at 861; *Rodrigues,* 68 F.Supp.2d at 184–85; *United States v. Torres–Del Muro,* 58 F.Supp.2d 931, 933– 34 (C.D.Ill.1999); *United States v. Tapia–*

---

**4.** To the extent that Petitioner is claiming that he was prejudiced by counsel's failure to file a motion to suppress based on violations of the Vienna Convention, the Court considers that claim in the context of Petitioner's separate contention that his attorneys were ineffective for failing to file a motion to suppress.

*Mendoza,* 41 F.Supp.2d 1250, 1255 (D.Utah 1999).[5]

■ Accordingly, the Court does not find that Petitioner's attorneys were deficient for failing to file a motion to suppress based on violations of the Vienna Convention. At the time of Petitioner's trial, there was no law indicating that such a motion would have been successful, and in fact, subsequent developments in the law have suggested that it would have been unsuccessful. An attorney's tactical decision not to press certain viable claims on appeal may fall within the ambit of objectively reasonable performance under the first prong of the *Strickland* test. *See Jones v. Barnes,* 463 U.S. 745, 752–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Evans v. Thompson,* 881 F.2d 117, 124 (4th Cir. 1989). Certainly, then, counsel's failure to file a motion to suppress for which no controlling legal support existed and which had little chance of success cannot constitute deficient performance under *Strickland. See United States v. Mikalajunas,* 186 F.3d 490, 493 (4th Cir.1999), *cert. denied,* — U.S. ——, 120 S.Ct. 1283, 146 L.Ed.2d 230 (2000) (finding no ineffective assistance for attorney's failure to object to sentencing enhancement when, at the time, there was no controlling authority indicating that enhancement was improper); *Smith v. Puckett,* 907 F.2d 581, 585 n. 6 (5th Cir.1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

■ For the same reason, Petitioner's claim also fails the prejudice prong of the *Strickland* test. Given the unlikelihood of success of a motion to suppress based on a violation of the Vienna Convention, Petitioner cannot establish that, but-for his attorneys' failure to file a motion to suppress, the outcome of the proceedings would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In addition, the Court notes that Petitioner does not specify what statements he believes should have been suppressed, or how, if at all, any such statements adversely affected his defense. In fact, attorney DuRant states in his affidavit that, to his knowledge, Petitioner never made any statements which might warrant seeking suppression.[6] On this basis alone, Defendant fails to satisfy *Strickland*'s prejudice requirement.

Accordingly, Petitioner's claim of ineffective assistance of counsel for failure to file a motion to suppress is **DENIED.**

**C. Petitioner's Claim that a General Guilty Verdict on a Multiple–Object Drug Conspiracy Mandates Vacating his Conviction or, in the Alternative, Resentencing him within the Statutory Maximum of the Drug Carrying the Lowest Penalty**

■ Count one of the indictment charged Petitioner with a multiple-object conspiracy to distribute and to possess with intent to distribute cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. § 846. At the close of evidence, the jury was instructed that it could find Petitioner guilty if the Government had proven, beyond a reasonable doubt, the

---

5. The Fourth Circuit has held that a defendant must establish prejudice from a Vienna Convention violation in order to obtain relief, *see Murphy,* 116 F.3d at 100–01, and has upheld district court denials of motions to suppress stemming from Vienna Convention violations on that basis. *See United States v. Ediale,* 201 F.3d 438, 1999 WL 991435 (4th Cir. Nov.2, 1999) (unpublished); *United States v. Salas,* 168 F.3d 484, 1998 WL 911731 (4th Cir. Dec.31, 1998) (unpublished). However, although it has noted that the Vienna Convention "certainly does not create constitutional rights," *Murphy,* 116 F.3d at 100, it has not yet addressed whether the suppression of evidence is ever an appropriate remedy for a Vienna Convention violation.

6. Petitioner's original attorney, Richard Yarrow, filed a generic Motion to Suppress Statements Made by Defendant, on June 12, 1996. However, at the hearing on July 12, 1996, he withdrew the motion for lack of factual or legal support. *See* Tr. Pretrial Mos., July 12, 1996, at 65–66.

existence of any one of the unlawful objects charged, provided they unanimously agreed as to a specific object.[7] The jury returned a general verdict finding Petitioner guilty of count one, and Petitioner was subsequently sentenced to life imprisonment, based in part on the large quantity of cocaine base with which he was attributed at sentencing. Petitioner argues that, because the jury returned only a general verdict finding him guilty of the conspiracy charge, there is no way of knowing on which of the unlawful objectives—distribution of cocaine, cocaine base, or marijuana—his conviction was based. He contends that the lack of a special verdict specifying the objectives of which the jury found him guilty requires the Court to vacate his conviction or, in the alternative, to resentence him to a term within the statutory maximum of the drug carrying the lowest penalty.

■ Petitioner's initial argument that his conviction must be vacated because the general verdict did not identify the objectives of the conspiracy lacks merit. It is well established that, when a jury returns a general verdict of guilty in a multiple-object conspiracy and none of the possible bases of conviction are unconstitutional or illegal, the verdict may be upheld if the evidence is sufficient with respect to any one of the objectives charged. *See, e.g., Griffin v. United States*, 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Hudgins*, 120 F.3d 483, 486–87 (4th Cir.1997). None of

the unlawful objectives alleged in count one of the indictment—conspiracy to distribute cocaine base, cocaine, or marijuana—was based on an invalid law, and Petitioner does not claim, nor does the Court find, that the evidence is insufficient as to all of the charged objectives. Accordingly, the Court DENIES Petitioner's claim that his conviction must be vacated because the general verdict failed to specify the object of the conspiracy. However, the Court will consider Petitioner's alternative argument that he must be resentenced within the statutory maximum of the drug carrying the lowest penalty.

■ The maximum allowable penalty for a narcotics conspiracy in violation of 21 U.S.C. § 846 is determined by reference to 21 U.S.C. § 841(b). However, no single maximum sentence is provided; the maximum penalty varies according to the type and quantity of drug for which a defendant is convicted. Thus, the sentencing court must determine the amount of each drug for which a defendant may be held responsible. *See* 21 U.S.C. § 841(b); *United States v. Rhynes*, 206 F.3d 349, 380 (4th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2234, 147 L.Ed.2d 263 (2000). In the case at bar, the Court determined that Petitioner was accountable for 496.71 grams of cocaine base and 37.71 grams of cocaine. The maximum penalty for conspiring to distribute the attributed amount of cocaine base is life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). However, the maximum penalty for the attributed quantity of cocaine is twenty years. *See* 21 U.S.C. § 841(b)(1)(C).[8] Petitioner thus ar-

---

**7.** When, as in this case, an indictment charges several acts in the conjunctive, a guilty verdict may be returned if the evidence is sufficient as to any one of the acts charged. *See Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

**8.** At sentencing, the Court applied the cross-reference for first degree murder. This resulted in a base offense level of 43, which requires a minimum term of life imprisonment. *See* U.S. Sentencing Guidelines Manual §§ 2D1.1(d)(1), 2A1.1. The maximum sen-

tence for a cocaine-only conspiracy involving the amount of cocaine attributable to Petitioner and in which "death or serious bodily injury results from the use" of a controlled substance is life imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). However, the murders for which Petitioner received the cross-reference at sentencing, although drug-related, did not directly result from the "use" of controlled substances. The Court has found no case law indicating that the statutory enhancement would be available for drug-related shootings.

gues that the jury could have found him guilty of a cocaine-only conspiracy, subjecting him to a statutory maximum of only twenty years.[9] Accordingly, he claims his sentence should be reduced to fall within that twenty-year maximum.

The Fourth Circuit recently addressed this issue in *United States v. Rhynes*, 206 F.3d at 378–81. In *Rhynes*, the defendants were charged with conspiracy under § 846 to distribute or to possess with intent to distribute heroin, cocaine, cocaine base, or marijuana. The jury returned a general verdict sheet finding the defendants guilty of the conspiracy. The district court subsequently sentenced the defendants based on the total amount of drugs for which it found them accountable. On appeal, the defendants argued that it was impossible to tell which drug the jury may have determined to be the object of the conspiracy, and that the jury could have found the object of the conspiracy to be marijuana only. Accordingly, they claimed that their sentences should not have exceeded the statutory maximum for a marijuana-only conspiracy. Three of the defendants had received sentences exceed-

ing the statutory maximum for marijuana. *See id.*

The Fourth Circuit found that, since the jury returned only a general verdict convicting the defendants of conspiracy, it was "impossible to determine on which statutory object or objects—sale of heroin, cocaine, cocaine base, or marijuana—the conspiracy conviction was based." *Id.* at 380. Therefore, the district court was prohibited "from imposing a sentence in excess of the statutory maximum for the least-punished object on which the conspiracy conviction could have been based." *Id.* Since three of the defendants had been given sentences exceeding the statutory maximum for the marijuana-only conspiracy for which they were eligible, the court withheld judgment and gave the government the option of retrying the defendants or having the court resentence them consistent with a marijuana-only conspiracy. *See id.* at 381.

■■■ Thus, according to *Rhynes*, Petitioner arguably should not have been sentenced in excess of the twenty-year statutory maximum for a cocaine-only conspiracy.[10] However, *Rhynes* was de-

9. Petitioner also argues that the jury could have convicted him of a marijuana-only conspiracy. However, although the indictment charged marijuana as one object of the conspiracy, Petitioner was not attributed with any marijuana at sentencing and the evidence does not appear to support a conviction for marijuana only. *See* discussion *infra* note 10. The maximum punishment for a marijuana-only conspiracy is five years. *See* 21 U.S.C. § 841(b)(1)(D).

10. Petitioner argues that he should be resentenced consistent with either a cocaine-only or a marijuana-only conspiracy. However, although the indictment charged a marijuana conspiracy, the evidence regarding marijuana concerned Petitioner's co-defendant, Ernest Sterling Wright, and Petitioner was not attributed with any marijuana at sentencing. Courts have held that, where a multiple-object drug conspiracy is charged and a general verdict is returned, a court is not required to sentence the defendant within the maximum allowable for the least-penalized drug offense if, as a matter of law, the evidence was insuf-

ficient to support a conviction for that drug offense. In that event, the court should assume that the jury found the defendant guilty of conspiring to distribute the least-penalized controlled substance as to which the evidence was sufficient to support a conviction. *See United States v. Green*, 180 F.3d 216, 225–27 (5th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 599, 145 L.Ed.2d 497 (1999); *United States v. Barnes*, 158 F.3d 662, 667–68 (2d Cir.1998); *United States v. Bell*, 154 F.3d 1205, 1212 (10th Cir.1998); *cf. United States v. Dennis*, 786 F.2d 1029, 1039–40 (11th Cir. 1986) (evaluating evidence for each objective charged and upholding sentence where evidence was sufficient to support a conviction on the drug carrying the higher penalty). This is consistent with the Fourth Circuit's reliance in *Rhynes* on the quantities of drugs with which the defendants were actually attributed at sentencing. *See Rhynes*, 206 F.3d at 380–81 & nn. 2–3. Because it does not need to reach the issue, the Court does not consider whether the evidence was sufficient to convict Petitioner of either a marijuana-only or a cocaine-only conspiracy.

cided in the context of a direct appeal from the defendants' convictions. Petitioner here did not raise this objection at trial, sentencing, or on appeal.[11] Because he raises the issue for the first time in his § 2255 petition, he must satisfy the requirements of *Frady* 's two-part "cause and actual prejudice" test to obtain relief. *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

■■■■ The federal government's strong interest in respecting the finality of its criminal judgments demands that a collateral challenge to a conviction not be permitted to do service for an appeal. *See Frady*, 456 U.S. at 165–66, 102 S.Ct. 1584. Accordingly, there is a presumption that, "[o]nce the defendant's chance to appeal has been waived or exhausted, … he stands fairly and finally convicted, … especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *Id.* at 164–65, 102 S.Ct. 1584. For this reason, a petitioner raising an objection for the first time on collateral attack "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.* at 168, 102 S.Ct. 1584. To establish cause, Petitioner must show that some objective factor external to the defense prevented his attorneys from raising the claim. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Turner v. Jabe*, 58 F.3d 924, 927 (4th Cir.1995). The cause-and-prejudice standard is significantly more strict than the standard of review on direct appeal. *See Frady*, 456 U.S. at 166, 102 S.Ct. 1584.

■■■■ Under some circumstances, the novelty of a claim can establish cause for the failure to object at sentencing or on appeal. Petitioner can demonstrate cause if his claim is so novel that its factual or legal basis was not reasonably available to counsel earlier. *See Reed v. Ross*, 468 U.S. 1, 16–17, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). However, if, at the time of sentencing or direct appeal, the tools to construct Petitioner's current objection were available, finality interests demand that a mere unawareness of the legal basis for his claim not constitute cause for Petitioner's procedural default. *See Engle v. Isaac*, 456 U.S. 107, 133–34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Thus, even if subsequent legal developments have clarified the law and made the claim easier to argue, cause will not be said to exist if "at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

■■■■ The Government concedes that, at the time of Petitioner's trial, it was not the practice in this district to use special verdicts in multiple-object drug conspiracy trials. Moreover, the Fourth Circuit did not decide *Rhynes* until 1999, well after Petitioner's trial in 1996 and his sentencing and appeal in 1997.

The Fourth Circuit's reasoning in *Rhynes* was based in part on the 1998 United States Supreme Court decision in *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). In *Edwards*, the defendants were charged with conspiracy to distribute cocaine or cocaine base. After the jury returned a general verdict of guilty, the district court sentenced the defendants based on its finding that they had conspired to distribute both cocaine and cocaine base. On appeal, the defendants argued that their sentences were unlawful because they were predicated on cocaine base, even though the jury could have convicted them of a cocaine-only conspiracy. The Seventh Circuit rejected the defendants' argument. *See United States v. Edwards*, 105 F.3d 1179 (7th Cir.1997). The Supreme Court

---

**11.** On appeal, Petitioner argued only that his sentence was calculated incorrectly according to the Sentencing Guidelines. *See United States v. Gregory*, 151 F.3d 1030, 1998 WL 390176, at *5 (4th Cir. June 23, 1998).

upheld the defendants' sentences, since according to the Sentencing Guidelines, the sentencing judge was required to consider the defendants' relevant conduct, which included distribution of both cocaine and cocaine base, and since the defendants' sentences fell within the statutory maximum applicable to a cocaine-only conspiracy. *See Edwards,* 523 U.S. at 514–15, 118 S.Ct. 1475. However, it noted that the result would be different if "the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy[,] . . . because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines." *Id.* at 515, 118 S.Ct. 1475.

Since the Supreme Court's decision in *Edwards,* several circuit courts have held, consistent with *Rhynes,* that sentences imposed for convictions under § 846 of multiple-object drug conspiracies for which only a general verdict was returned may not exceed the statutory maximum for the drug carrying the lowest penalty. *See United States v. Dale,* 178 F.3d 429, 432–34 (6th Cir.1999); *United States v. Barnes,* 158 F.3d 662, 666–69 (2d Cir.1998); *see also United States v. Bell,* 154 F.3d 1205, 1209–12 (10th Cir.1998) (recognizing principle but allowing sentence to stand because evidence was insufficient to support conviction for lesser-penalized controlled substance).

However, the principle articulated in *Rhynes* and *Edwards* is not a new one. The Supreme Court in *Edwards* cites to the Second Circuit's 1984 decision in *United States v. Orozco–Prada,* 732 F.2d 1076 (2d Cir.1984). In *Orozco–Prada,* the Second Circuit reached the same conclusion regarding sentences for multiple-object drug conspiracies as the Fourth Circuit subsequently did in *Rhynes. See Orozco–Prada,* 732 F.2d at 1083–84. Prior to Petitioner's trial in 1996, several other circuits had likewise held or indicated that, absent

a special verdict, a sentence for a multiple-object drug conspiracy cannot exceed the statutory maximum for the controlled substance carrying the lowest penalty. *See United States v. Fisher,* 22 F.3d 574, 576 (5th Cir.1994) (recognizing principle but finding no error because defendant's sentence was within the statutory maximum for lesser-penalized drug); *Newman v. United States,* 817 F.2d 635, 637–39 (10th Cir.1987) (holding that uncertainty regarding jury's finding as to object of conspiracy taints both sentence and conviction itself, and vacating conviction [12]); *United States v. Dennis,* 786 F.2d 1029, 1037–41 (11th Cir.1986) (recognizing principle but finding no error because evidence was sufficient to support conviction for higher-penalized drug).

In reaching its decision in *Orozco–Prada,* the Second Circuit relied in large part on the Fourth Circuit's 1975 holding in *United States v. Quicksey,* 525 F.2d 337 (4th Cir.1975). *See Orozco–Prada,* 732 F.2d at 1083–84. The defendants in *Quicksey* were convicted of a conspiracy charging the violation of two separate statutes: (1) interstate travel in relation to a narcotics business, in violation of the Travel Act, 18 U.S.C. § 1952, and (2) distribution of narcotics, in violation of 21 U.S.C. § 841. The jury was instructed that it could find the defendants guilty of conspiracy if it found that they had engaged in either a drug distribution conspiracy or a general conspiracy involving interstate travel in connection with narcotics. Although the maximum penalty for a conspiracy to violate the Travel Act is five years imprisonment, the district court imposed a sentence exceeding five years, in accordance with a narcotics conspiracy under 21 U.S.C. § 846. *See Quicksey,* 525 F.2d at 340. On appeal, the Fourth Circuit held that since there was no special verdict, it was not possible to determine whether the jury found the defendants

---

**12.** The *Newman* court's holding that the conviction itself should be vacated was subsequently abrogated by the Supreme Court's

decision in *Griffin v. United States,* 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

guilty of violating the Travel Act, the Drug Act, or both. Accordingly, the court withheld judgment to allow the government to consent to a resentencing or, in the alternative, to have the court vacate the convictions and remand for a new trial. *See id.* at 341.

Prior to 1996, several circuits had held, like the Fourth Circuit in *Quicksey,* that a defendant convicted of a conspiracy charging the violation of two separate statutes may not be sentenced to more than the maximum penalty for the least-penalized statutory object. *See United States v. Garcia,* 37 F.3d 1359, 1369–71 (9th Cir. 1994); *United States v. Cooper,* 966 F.2d 936, 940–41 (5th Cir.1992); *Brown v. United States,* 299 F.2d 438, 440 (D.C.Cir.1962); *see also United States v. Peters,* 617 F.2d 503, 506–07 (7th Cir.1980) (recognizing principle but finding error harmless because of applicability of concurrent sentence doctrine). These cases differ from *Rhynes* and from the case at bar because they involve convictions for a conspiracy charging the violation of more than one statute, rather than convictions charging the violation of a single statute with multiple objects. However, the principle behind both lines of cases is the same. *See Orozco–Prada,* 732 F.2d at 1084 ("this case raises the same problem of ascertaining juror intent that is at issue in counts charging the violation of multiple statutes."). Accordingly, the Fourth Circuit cited *Quicksey,* along with *Edwards,* as the applicable precedent supporting its holding in *Rhynes. See Rhynes,* 206 F.3d at 379–80.

In addition, prior to 1996, several courts had applied the same principle to applications of the Sentencing Guidelines. These courts held that, when confronted with a conviction of a multiple-object narcotics conspiracy with no special verdict, the district court must impose a sentence in accordance with the object carrying the lowest Guidelines offense level. *See United*

*States v. Bounds,* 985 F.2d 188, 195 (5th Cir.1993); *United States v. Pace,* 981 F.2d 1123, 1129–30 (10th Cir.1992); *United States v. Owens,* 904 F.2d 411, 414–15 (8th Cir.1990). Although these holdings were subsequently abrogated by the Supreme Court's decision in *Edwards v. United States,* 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), they nevertheless relied on the same principle that dictated the Fourth Circuit's holding in *Rhynes.*

Accordingly, the Court cannot say that Petitioner's claim was sufficiently novel, at the time of his trial, sentencing, and appeal, to constitute cause excusing his failure to raise the claim earlier. Courts have consistently held that novelty does not exist if the claim had been raised—even if rejected—in other circuits or in lower courts. *See, e.g., Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (finding no novelty where, at relevant time, "the Federal Reporters were replete" with similar challenges); *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (finding no novelty where "various forms of the claim ... had been percolating in the lower courts for years"); *Turner v. Jabe,* 58 F.3d 924, 928 (4th Cir.1995) (finding no novelty where issue had been raised in dissents, in other circuits, and in state courts). Here, notwithstanding the fact that special verdicts were not ordinarily requested and that the Fourth Circuit did not address the precise issue presented here until it decided *Rhynes* in 1999, the legal tools necessary to conceive and argue his claim were available well before Petitioner's trial even began. Several other circuits had already held, in the context of multiple-object drug conspiracies, that a defendant could not be sentenced to more than the statutory maximum for the least-penalized drug, and the Fourth Circuit had recognized the same principle in the context of a conspiracy charging violations of multiple statutes.[13] Thus, the Court finds

---

**13.** In fact, Petitioner cites to *Orozco–Prada* and other pre-*Rhynes* cases in his § 2255 petition, undermining any claim that the issue

that Petitioner has not shown cause excusing his procedural default, and his claim that he must be resentenced is therefore DENIED.[14]

### D. Petitioner's Claim that his Attorneys Rendered Ineffective Assistance by Failing to Request a Special Verdict and by Failing to Raise the Absence of a Special Verdict as Plain Error on Appeal

Petitioner argues that his attorneys should have requested a special verdict specifying the jury's finding as to the object of the conspiracy. He further contends that they should have argued on appeal that the absence of a special verdict was plain error mandating resentencing him within the statutory maximum for the least-penalized drug, in accordance with the Fourth Circuit's subsequent holding in *Rhynes*. He claims that their failure to do so constitutes ineffective assistance of counsel.

■■■ The Court's finding that Petitioner's *Rhynes* claim is not sufficiently novel to constitute cause excusing his procedural default does not imply that his attorneys were ineffective for failing to raise the issue at trial, sentencing, or on appeal. *See Engle v. Isaac*, 456 U.S. 107, 133–34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (finding no novelty but noting that

not "every astute counsel" would have recognized or argued claim); *United States v. Mikalajunas*, 186 F.3d 490, 493–94 (4th Cir.1999) (finding no novelty sufficient for cause and also finding no ineffective assistance of counsel); *Poyner v. Murray*, 964 F.2d 1404, 1423–25 (4th Cir.1992) (same). A claim is not considered novel if the legal and factual tools with which to construct it were available at all at the time of trial or appeal. *See, e.g., Smith*, 477 U.S. at 536–37, 106 S.Ct. 2661; *Isaac*, 456 U.S. at 131–34, 102 S.Ct. 1558; *Turner*, 58 F.3d at 927–30. On the other hand, an attorney's performance is considered deficient only if it falls outside the wide range of professional competence such that it sinks below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, a Court's scrutiny of counsel's performance must be highly deferential and effective assistance is presumed. *See id.*

■■■ At the outset, the Court notes that special verdicts were not ordinarily requested in multiple-object drug conspiracy trials at the time of Petitioner's trial or appeal. Moreover, courts have indicated that it is the government's duty, not the defendant's, to request a special verdict in such cases. *See United States v. Garcia*, 37 F.3d 1359, 1370 (9th Cir.1994); *Orozco–Prada*, 732 F.2d at 1084. The Court is

---

he now raises is a novel one. *See Turner*, 58 F.3d at 928.

14. The Court notes that in *Newman v. United States*, 817 F.2d 635 (10th Cir.1987), the Tenth Circuit reversed a portion of the district court's denial of a § 2255 petition on the same grounds that Petitioner urges in the instant case. The petitioner in *Newman* had been convicted under § 846 of conspiracy to distribute cocaine, methaqualone, and marijuana, and received a sentence exceeding the statutory maximum for a marijuana-only or a methaqualone-only conspiracy. On appeal from the district court's denial of his § 2255 petition, the court found that the absence of a special verdict, resulting in a sentence exceeding the statutory maximum for the lowest-penalized drugs, constituted plain error. It therefore held that the petitioner must either

be retried on the conspiracy count or resentenced within the statutory maximum of the least-penalized drug. *Newman*, 817 F.2d at 637 & n. 3, 639. However, the Tenth Circuit did not address *Frady*'s cause-and-prejudice requirement. *Frady* specifically holds that the plain error standard used on direct appeal is not the appropriate standard by which to evaluate a collateral attack made pursuant to § 2255. Such a collateral attack must be reviewed according to the more stringent cause-and-prejudice standard. *See Frady*, 456 U.S. at 164, 167–68, 102 S.Ct. 1584. Accordingly, to the extent that *Newman* suggests that Petitioner's § 2255 claim should be reviewed according to the same standards as it would be on direct appeal or that *Frady*'s cause-and-prejudice requirement need not be satisfied, the Court declines to follow it.

therefore reluctant to find counsel constitutionally ineffective for failing to request a special verdict or to appeal its absence.

■ Nevertheless, an attorney has a duty to make a reasonable investigation of the law and facts applicable to a particular case. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Prior to Petitioner's trial, several circuits had considered the issue, subsequently addressed by the Fourth Circuit in *Rhynes,* that Petitioner raises here. However, an attorney is not constitutionally deficient for failing to research the law of other circuits. *See McNamara v. United States,* 867 F.Supp. 369, 374 (E.D.Va.1994), *rev'd on other grounds,* 74 F.3d 514 (4th Cir.1996). In *McNamara,* this court held that, although an attorney was not ineffective for failing to research the law of other circuits, he was ineffective for failing to discover that, at the time of his trial, the Supreme Court had granted certiorari on the issue raised by the petitioner. *See id.* at 374–76. On appeal, the Fourth Circuit held that an attorney is not ineffective for failing to discover that certiorari has been granted on a relevant issue and reversed the district court's grant of the petitioner's § 2255 motion. *See United States v. McNamara,* 74 F.3d 514, 516–17 (4th Cir. 1996). In doing so, it implicitly affirmed this court's finding that the attorney was not deficient for failing to research other circuits' law. *Cf. Kornahrens v. Evatt,* 66 F.3d 1350, 1360 (4th Cir.1995) (finding no ineffective assistance of counsel for failure to anticipate a new rule of law). Accordingly, the Court finds that Petitioner's trial and appellate attorneys were not constitutionally deficient for failing to raise arguments based on *Orozco–Prada* and other non-Fourth Circuit case law.

Until *Rhynes,* there was no controlling law in the Fourth Circuit addressing the precise issue Petitioner raises here. Although the Fourth Circuit had addressed an analogous situation in *Quicksey,* it had not applied the principle underlying *Quicksey* to a conviction under a single statute,

§ 846, for a conspiracy involving multiple drugs. *Quicksey* involved defendants convicted of a conspiracy to commit two separate crimes, prohibited by two separate statutes. The court's holding in *Quicksey* did not mandate its subsequent holding in *Rhynes,* which dealt specifically with a single-statute, multiple-object drug conspiracy. Because drug quantities and types are generally viewed as sentencing issues to be decided by the sentencing judge, the return of a general verdict for a § 846 conspiracy charging the violation of a single statute involving multiple drugs does not necessarily raise the same concerns as a conspiracy charging the violation of two separate statutes. *See United States v. Edwards,* 105 F.3d 1179, 1180–82 (7th Cir. 1997) (discussing the difference between conspiracy to commit two crimes and conspiracy, under § 846, "to commit one crime in two ways," and finding *Orozco–Prada* and other comparable circuit court decisions to be incorrect extensions of the *Quicksey* holding).

However, the Supreme Court indicated in *Edwards* that a general verdict in a single-statute, multiple-object drug conspiracy does present the same problems as in a multiple-statute conspiracy. *See Edwards v. United States,* 523 U.S. 511, 515, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). The Fourth Circuit's decision in *Rhynes* thus built on both its holding in *Quicksey* and the Supreme Court's dicta in *Edwards. See Rhynes,* 206 F.3d at 379–80. At the time of Petitioner's trial and appeal, however, there was no controlling law in the Fourth Circuit on the issue. Accordingly, the Court finds that Petitioner's trial and appellate attorneys were not deficient for failing to request a special verdict and failing to argue on appeal that its absence was plain error. *See Mikalajunas,* 186 F.3d at 493 & n. 2 (finding no ineffective assistance of counsel for failing to raise a claim where, at the time of sentencing and appeal, there was no controlling law on the issue); *Kornahrens,* 66 F.3d at 1360 (find-

ing no ineffective assistance for counsel's failure to anticipate a new rule of law).

The Court recognizes the seeming unfairness of this result, since Petitioner arguably would have received a significantly lower sentence if his *Rhynes* claim had been raised at trial or on appeal.[15] However, the interests of finality demand that the Court adhere to the strict procedural standards applied to a collateral challenge. "[T]he rules are clear, and [the Court] is constrained by their inexorable commands." *Kornahrens,* 66 F.3d at 1360. Moreover, although the failure of Petitioner's attorneys to raise this issue at sentencing or on appeal may be unfortunate, that failure does not render them constitutionally deficient. *See id.* An attorney's performance is not constitutionally deficient if it is merely below-average; the Constitution does not guarantee that defense counsel will recognize and raise every possible claim. *See Isaac,* 456 U.S. at 133–34, 102 S.Ct. 1558; *Griffin v. Warden,* 970 F.2d 1355, 1357 (4th Cir.1992). Given the absence of clear authority in this circuit until *Rhynes* was decided in 1999 and given the presumption of an attorney's effective performance, the Court cannot find that Petitioner's attorneys rendered ineffective assistance of counsel. Accordingly, Petitioner's claim of ineffective assistance of counsel on this ground is **DENIED.**

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED.**

---

15. However, it is worth noting that Petitioner does not argue, and the Court does not find, that Petitioner is actually innocent of the sentence he received. A petitioner who fails to meet *Frady*'s cause-and-prejudice standard may nonetheless show actual innocence to excuse his procedural default. *See Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639 (1986). Typically, actual innocence is shown when the petitioner demonstrates that he is factually innocent of the offense of conviction- that is, that he did not commit the crime. *See*

Petitioner is **ADVISED** that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 8000, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**

---

*Mikalajunas,* 186 F.3d at 494. The Fourth Circuit has ruled that the actual innocence exception applies to non-capital sentencing determinations "only in the context of eligibility for application of a career offender or other habitual offender guideline provision." *Id.* at 495. Since Petitioner here was not sentenced pursuant to any such provision, the actual innocence exception does not apply. In any event, there is ample evidence in the record of Petitioner's extensive dealings in cocaine base.