Carlotta LEANO, Petitioner,

v.

**UNITED STATES of America, Respondent.**

No. CIV.A.9:02–3751–08.
No. CRIM. 9:00–CR–766.

United States District Court,
D. South Carolina,
Beaufort Division.

Sept. 8, 2004.

Carlota Leano, Tallahassee FCI, Tallahassee, FL, Pro se.

Miller W. Shealy, Jr., U.S. Attorneys Office, Charleston, WV, for U.S.

## ORDER

BLATT, Senior District Judge.

### INTRODUCTION

This matter is before the Court on the *pro se* Petitioner's request for writ of habeas corpus, pursuant to 28 U.S.C. § 2255. The Petitioner was sentenced in to two concurrent 120–month periods of incarceration, followed by concurrent five-year and three-year periods of supervised release, after pleading guilty to a drug distribution conspiracy and a money laundering conspiracy. The Petitioner did not appeal her conviction or sentence.

She then filed the present action, alleging several grounds for relief. The Petitioner was permitted to file additional grounds for relief. The Government has moved for summary judgment on all issues. After being given notice of the obligation to respond, *see Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), the Petitioner filed a written response. The matter is now ripe for decision.

### DISCUSSION

#### Background Facts

From the record, taking any disputed facts in the light most favorable to the Petitioner, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the following facts can be established. At approximately 8:45 am on March 3, 2000, Cpl. Jesse Pringle of the Colleton County Sheriff's Office stopped the Petitioner's van for speeding (78 mph in a 70–mph zone). After engaging her in conversation, the officer noticed that the Petitioner gave inconsistent statements about whether she was traveling alone and where her journey began.[1] He noticed that the Petitioner hesitated and stuttered in answering his questions, and often asked him to repeat the questions he asked. The officer also determined that the van was rented in New York by the Petitioner's mother (a passenger in the van), and that the Petitioner flew to New York for a wedding. The Petitioner also explained that her mother was of Colombian descent, with family in Jacksonville, Florida, and did not speak English.

After giving the Petitioner a warning citation for the speeding violation, the Petitioner jokingly responded, "next time I

---

1. The officer's report, uncontradicted by the Petitioner, states that when asked why she was traveling so fast, the Petitioner responded that she "was keeping up with her group," but later indicated that she was traveling alone.

The report also states that the officer asked the Petitioner where she was coming from, the Petitioner "stated New York and then stuttered and stated not really New York stuttering again and stating Pittsburg[h]." The officer later asked, after discovering the van was rented in New York, how she got to New York, to which the Petitioner replied "in a plane."

see you, I'll step on the gas." The officer replied, "okay, thank you," and began walking back to his patrol car, but turned around and asked the Petitioner if he could ask her one more question. When the Petitioner responded affirmatively, the officer explained that vehicles are often rented for the purpose of transporting drugs, guns, stolen goods and large sums of cash. He asked the Petitioner if she was transporting any such items, to which the Petitioner responded (after asking him to repeat it) "no." He then asked her if he could search the van. The Petitioner responded, "I don't see why not."

A search of the van revealed several sealed postal envelopes in a duffel bag with clothes and other personal items. The Petitioner did not consent to the envelopes being opened. After feeling the contents of the envelopes, the officer asked the Petitioner if the envelopes contained cash, and the Petitioner responded by asking the officer if he wanted the truth. The officer asked "how much" was in the envelopes, and the Petitioner replied that they contained approximately four to five hundred thousand dollars. A K–9 unit was called, and the drug dog alerted to four of the eight pieces of luggage in the van, each of which contained postal envelopes or plastic bags with money in them. The dog alerts indicated to the officer that there was a significant trace of drugs on or in the envelopes and plastic bags.

After the envelopes and plastic bags were seized, DEA agents examined the contents and discovered that they contained cash totaling $773,530.00 in U.S. currency, as well as five counterfeit $20.00 bills. It was determined that at least one of the plastic bags containing currency was from a Hilton Hotel, that some of the money was wrapped in paper strips with clear tape, and that the Petitioner's mother had rented a room at the Hilton in Manhattan, New York City on February 29 and March 1. Among the Petitioner's possessions were found a roll of clear tape, Hilton Hotel stationery similar to that used to bundle the cash, and a list of "money counts" written on Hilton Hotel stationery.

Further investigation revealed that the Petitioner and her mother arrived in New York from Miami on February 29 (three days before the stop), and had return tickets for March 2. Petitioner's mother is also the mother of a known cocaine trafficker and money launderer (Carlos Julio Leano) from the Miami area.

The Petitioner's cellular phone, in her possession at the time of the stop, had been used to call several cellular phones identified in numerous ongoing DEA investigations. Two cooperating witnesses stated that they delivered drug money to two older women, identifying the Petitioner as one of the women from a photograph, at the Hilton Hotel in New York City just days before the stop.

The investigation uncovered a series of at least 15 airline reservations between Miami and New York, car rentals in New York, and Hilton Hotel reservations in New York over the six-week period leading up to the stop, with an average stay of 2 days. Finally, the investigation revealed two bank accounts opened by the Petitioner's mother, one for the Petitioner's benefit, which had deposits totaling over $137,000.00 in an 18–month period, which belies the employment earnings information obtained for either woman.

*Legal Issues*

The Petitioner's petition and memoranda are not entirely cogent, consisting largely of legal-digest-like quotes and citations which no not always relate to the issues argued. Reading her submissions liberally, the Petitioner alleges the following grounds for relief:

(1) the stop and search of her vehicle, and the subsequent seizures therefrom were illegal; counsel was ineffective in failing to file a motion to suppress on these grounds; and the Government is guilty of malicious prosecution and manufacturing evidence;

(2) the plea hearing was improper; the Government failed to prove the elements of the offenses; and counsel was ineffective because he permitted the plea to go forward and because he was not aware of the consequences of relevant conduct on her sentence;

(3) the plea was unconstitutional as it violates the doctrine of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and counsel was ineffective for failing to raise this issue;

(4) there is insufficient evidence to support a drug conspiracy charge; and counsel was ineffective for failing to raise this issue;

(5) counsel was ineffective for failing to object to the presentence investigation report; and counsel was ineffective for failing to move for downward departure based upon (a) her qualification for the "safety valve" provision, (b) being a minimal or minor participant in the conspiracies, and/or (c) her violent and turbulent past.

Each area will be discussed in turn.

- *Standard of Review*

■ Generally, 28 U.S.C. § 2255 requires petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." This is the proof needed to allege a constitutional error. "The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalajunas,* 186 F.3d 490, 495–96 (4th Cir.1999) (citation omitted).

The claims alleged by the Petitioner, however, could have been raised on appeal, but were not, subjecting them to a different standard of review:

In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.

*United States v. Mikalajunas,* 186 F.3d at 492–93 (citations omitted). To establish cause for procedural default based upon ineffective assistance of counsel, petitioners "must show that their attorneys' performance fell below an objective standard of reasonableness and that they suffered prejudice as a result." *Id.* (citing *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ Here, the Petitioner failed to appeal her conviction and sentence, despite being advised by the Court of this right at sentencing. Moreover, the Petitioner does

not allege that her counsel was ineffective for failing to file a notice of appeal upon her request. Her claims are, therefore, procedurally defaulted and no writ of habeas corpus may issue unless the Petitioner can demonstrate that a "miscarriage of justice" would result—that is, that she is actually innocent of the charges. *Mikalajunas*, 186 F.3d at 492–93. It is under this standard that the Court proceeds.

- *Search and Seizure*

The primary argument the Petitioner asserts in this action is that the stop and subsequent search of her vehicle were unconstitutional. Nowhere does the Petitioner challenge the Government's assertion that she voluntarily gave consent to search, nor does she claim that she was somehow coerced into consenting to the search. The Petitioner focuses on the initial stop of the vehicle and the officer's conduct during the stop.

■ It is well established that a law enforcement officer may stop a vehicle for violating traffic laws, in order to issue either a warning or a citation. *E.g., United States v. Hassan El*, 5 F.3d 726, 730–31 (4th Cir.1993). This is so even if the officer had suspicions about the vehicle or occupants, and would not normally have stopped the vehicle for the violation in question if not for those suspicions. *Id.; see United States v. Swann*, 149 F.3d 271, 275–76 (4th Cir.1998).[2] The Petitioner has never disputed the essential facts surrounding the stop of the van. She has never disputed the arresting officer's statement that she admitted to traveling 78 miles per hour in a 70–miles–per–hour zone. This fact alone gave the officer valid

justification to execute a traffic stop of the van. *Hassan El*, 5 F.3d at 730–31.

■ A traffic stop is certainly a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir.1992) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). "An ordinary traffic stop is, however, a limited seizure more like an investigative detention than a custodial arrest." *Id.* (citing *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). Accordingly, courts use the analysis for investigative detention announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to determine the scope of police authority in traffic stops. *Id.*

> Following *Terry*, the law has become well established that during a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. *United States v. Rusher*, 966 F.2d 868, 876–77 (4th Cir.1992). Any further investigative detention, however, is beyond the scope of the *Terry* stop and, therefore, illegal unless the officer has a reasonable suspicion of other criminal activity or the individual consents to the further detention. *Id.; see also United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir.1998).

*United States v. Foreman*, 369 F.3d 776, 781 (4th Cir.2004).

■ Here, there is no dispute that the Petitioner verbally consented to the search after the officer had issued a warning cita-

---

2. The Petitioner makes no explicit suggestion that the stop was pretextual, but her claims of manufactured or planted evidence and prosecutorial misconduct seem to cast doubt on all the events. Although it is irrelevant under established law, *see Swann*, 149 F.3d at 275–

76, after a review of the evidence the Court finds that the arresting officer did not use the speeding violation as a pretext, and that he was merely "working traffic" along the interstate.

tion and returned her driver's license and vehicle information. The question is whether the consent was valid or coerced, or whether "a reasonable person in the suspect's position 'would have felt free to decline the officers' requests or otherwise terminate the encounter.'" *United States v. Sullivan,* 138 F.3d 126, 133 (4th Cir. 1998) (quoting *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). This determination is viewed under the "totality of the circumstances." *Id.; United States v. Weaver,* 282 F.3d 302, 310 (4th Cir.); *cert. denied,* 537 U.S. 847, 123 S.Ct. 186, 154 L.Ed.2d 75 (2002).

■ In applying the totality of the circumstances test, courts look to a number of factors, "including the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen." *Weaver,* 282 F.3d at 310–11 (numerous citations omitted). Further, the Fourth Circuit has repeatedly held that asking additional questions after giving back a driver's license and registration, while not dispositive, is an "important factor" in determining whether there was a Fourth Amendment "seizure" after a valid stop. *Id.* at 310–11; *Sullivan,* 138 F.3d at 133; *United States v. Lattimore,* 87 F.3d 647, 653 (4th Cir.1996) (en banc); *United States v. Rusher,* 966 F.2d at 872.

■ There is simply nothing in the record to indicate that the Petitioner did not feel free to terminate the encounter. The officer did not use threatening language, there was only one officer present at the time consent was requested, no weapon was ever drawn, the stop occurred on a busy interstate in broad daylight, and there was no physical touching aside from

that necessary to hand over documents. The circumstances meet none of the factors which could indicate coercion. *See Weaver,* 282 F.3d at 310–11.

The officer's report also indicates that after he returned her license and rental information, he explained the warning to the Petitioner, and the Petitioner jokingly said, "next time I see you, I'll step on the gas," to which the officer responded, "okay, thank you." This type of banter indicates a scene far from a coercive environment, but rather one of relaxed conversation. It was at this point that the officer asked the Petitioner if he could ask her "one more question." It is clear that the investigatory stop had concluded, and that his detention of the Petitioner was over, and that his questioning the Petitioner was voluntary. *See Weaver,* 282 F.3d at 310–11; *Sullivan,* 138 F.3d at 133; *Lattimore,* 87 F.3d at 653. In short, the Court concludes that, at the time of the request to search, the Petitioner was free to decline the officer's request and thus not "in custody," the request for consent, under the totality of the circumstances, was not coercive, and the consent was voluntarily given. The search and its subsequent findings were therefore constitutional.

■ Based on the above analysis, the Court is convinced that the officer needed no additional suspicion or cause in order to search the van. However, giving the Petitioner the benefit of the doubt, the Court further finds that the officer had a "reasonable suspicion of unlawful activity," *e.g., United States v. Foreman,* 369 F.3d at 781, and was therefore justified in inquiring further into the existence of contraband.

A determination of reasonable suspicion or probable cause does not depend on any single factor, but on the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)(reasonable suspi-

cion); *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527, (1983) (probable cause). In addressing such issues, we assess the relevant facts known to the authorities and decide whether those facts, "from the standpoint of an objectively reasonable police officer," give rise to reasonable suspicion or probable cause. [*Ornelas v. U.S.,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ].

A reasonable suspicion exists when law enforcement officers possess " 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas,* 517 U.S. at 696, 116 S.Ct. 1657 (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). *United States v. Singh,* 363 F.3d 347, 355 (4th Cir.2004). In addition, "it must be noted that, because the *Terry* reasonable suspicion standard is a commonsensical proposition, '[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street.' " *Foreman,* 369 F.3d at 782 (quoting *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993)).

The officer had several facts that led him to the suspicion the Petitioner was carrying contraband. First, the Petitioner stuttered and stammered in answering his questions, and asked him to repeat some questions several times, indicating extreme nervousness. The Petitioner submits that she is a habitual stutterer, the result of years of abuse by parents and boyfriends, and that the noise along the highway was too loud to hear the officer speak. The Court agrees that stuttering and asking to repeat are not in and of themselves suspicious, but combined with other behavior at the stop, especially considering that the officer did not know at the time of the stop that the Petitioner habitually stuttered, they are certainly factors to be considered in examining the stop. *See United States*

*v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (noting that while any one of several factors used to justify a stop were not in itself "any proof of illegal conduct and is quite consistent with innocent travel," these factors, "when taken together, give rise to reasonable suspicion"); *United States v. Arvizu,* 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (reasonable suspicion may exist even if "each of these factors alone is susceptible of innocent explanation"); *see Foreman,* 369 F.3d at 781 (quoting both).

The Petitioner also gave conflicting statements as to whether she was traveling alone and where her trip started. She initially said "New York" and then "not really New York [but] Pittsburg[h]," only later to admit that she flew in to New York. Finally, the Petitioner was traveling in a van rented in New York, after she admitted flying to New York to get the van. Again, this behavior is not illegal, and it is not by itself cause to search a vehicle. However, this fact, combined with the other behavior the officer witnessed, and the officer's considerable experience in investigating the transportation of drugs, guns, stolen property or drug money along 1–95, the officer was not unreasonable in searching the vehicle, even if consent were not given. *See Foreman,* 369 F.3d at 781– 82 (citing authority). Accordingly, the Petitioner's argument in this regard is denied.

■ Because there was nothing illegal or unconstitutional about the search and seizure in this case, the Petitioner's counsel cannot be found ineffective for failing to raise the issue. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir.1994) (noting that there can be no ineffective assistance of counsel in failing to raise an issue which is not legally viable); *United States v. Mikalajunas,* 186 F.3d at 493 (same). Finally, there is simply no evi-

dence that law enforcement officers planted or manufactured evidence against the Petitioner. These claims are also rejected.

*- Plea Colloquy*

The Petitioner asserts that her guilty plea was "not made knowingly and intelligently," because she "did not have all the factual facts and basis or requirements, and the District Court did not advise defendant she had the right to a jury trial and that the government would have to prove all the elements of the offense." She further claims that her counsel coerced her into plead guilty without a plea agreement because he was not fully aware of the "implications and consequences of any relevant conduct."

> A voluntary and intelligent plea of guilty is an admission of all the elements of a formal criminal charge, and constitutes an admission of all material facts alleged in the charge. Furthermore, a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges.

*United States v. Willis,* 992 F.2d 489, 490 (4th Cir.1993) (internal quotations and numerous citations omitted). "If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." *United States v. Lambey,* 974 F.2d 1389, 1394 (4th Cir.1992) (en banc).

■ The Petitioner makes two separate claims challenging her guilty plea: that the Court erred in informing her of required information under Federal Rule of Criminal Procedure 11, and that counsel failed to properly advise her as to the consequences of pleading guilty. As to the former, the Supreme Court has placed a high standard on petitioners who fail to challenge their pleas either at the time of the plea or on direct appeal. A defendant cannot overturn a guilty plea on collateral review absent a showing that the Rule 11 proceeding was " 'inconsistent with the rudimentary demands of fair procedure' " or constituted a " 'complete miscarriage of justice.' " *United States v. Timmreck,* 441 U.S. 780, 783, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). *See United States v. Vonn,* 535 U.S. 55, 63–64, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (noting that the adoption of Rule 11(h) did not affect the standard of review on collateral review).

The Petitioner's claims in this regard are without merit. The record clearly shows that she was fully advised of her rights and what she was giving up as a result of pleading guilty. The fact that she would be entitled to a jury trial, and that the Government would be forced to prove her guilt beyond a reasonable doubt were fully explained. The applicable mandatory minimum and maximum sentences were explained to her, as were the elements of the offenses to which she pleaded guilty. The Court explained the Sentencing Guidelines to the Petitioner, and recognized that the Petitioner's attorney was well qualified to give advice on their effect, including the fact that any agreement between she and the Government was not binding on the Court. The Court and the Petitioner heard evidence from the Government of its proof of the crimes charged, and the Petitioner stated that the evidence as presented was "substantially true and correct." The Court assured itself that the Petitioner's plea was knowing and voluntary, and that the conduct to which she admitted satisfied the elements of the offenses charged.

■ The Petitioner has presented no proof that the plea was not proper. She generally asserts that she was not informed of the consequences of the plea.

This is insufficient to meet the high standard announced in *Timmreck*, 441 U.S. at 783, 99 S.Ct. 2085. This claim must be rejected.

Second, the Petitioner asserts that counsel was ineffective in advising her to plead guilty. These claims are governed by the Supreme Court case of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires that the petitioner demonstrate (1) that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense," i.e., that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." In other words, the Petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness," and that the deficiencies in his performance "prejudiced the defense." *Id.* at 687–88, 104 S.Ct. 2052; *see Carter v. Lee*, 283 F.3d 240, 248 (4th Cir.2002) (citing same).

 The Petitioner claims that counsel was inexperienced with respect to the Guidelines, particularly in regards to relevant conduct, and that he coerced her into a plea to cover up his "unpreparedness." The Petitioner has made no specific claims, however, as to what counsel said or did not say to her concerning the effect of relevant conduct on her Guideline sentence. She has totally failed to rebut the affidavit submitted by her counsel, which states unequivocally that he went over all the discovery provided by the Government with her, explained the effect of the Sentencing Guidelines on her case, and described the law of conspiracy to her. The absence of a plea agreement is inconsequential as the Petitioner refused to coop-

erate and therefore could not receive less than the mandatory minimum sentence for the crimes to which she pleaded guilty.

The Court finds that counsel's assistance did not fall below an objective standard. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. Indeed, there is no evidence that counsel did anything at all wrong or unreasonable. Counsel, as an Assistant Federal Public Defender, works with the Sentencing Guidelines on a daily basis, rendering laughable the Petitioner's claim that counsel was "inexperienced" in the Guidelines. The Petitioner does not dispute counsel's assertions that he carefully reviewed the evidence and the law with her, and submits no evidence in support of her conclusory allegation that counsel was unprepared. Simply put, the Petitioner's claims in this regard are totally without merit. This argument is rejected.[3]

- *Apprendi*

 As noted by the Government, claims under *Apprendi* have not been made retroactive to cases on collateral review. *United States v. Sanders*, 247 F.3d 139, 146–51 (4th Cir.2001) (stressing that habeas corpus was not a substitute for direct appellate review). In any event, even if *Apprendi* were applicable here, and even under the most generous standard of review, the Petitioner's sentence does not violate *Apprendi*.

The Petitioner was sentenced to two concurrent 120–month (10–year) sentences. Her claim that the drug amounts were required to be stated in the indictment misunderstands the law of *Apprendi*. There is error under *Apprendi* only where a defendant's sentence is increased above the statutory maximum for that crime. 530 U.S. at 470, 120 S.Ct. 2348. Here,

---

**3.** Once it is determined that counsel's assistance did not fall below an objective standard, there is no need to discuss prejudice. *E.g.,*

*Huffington v. Nuth*, 140 F.3d 572, 579–80 (4th Cir.1998) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).

where there is no drug amount listed, the "default" statutory provision is 21 U.S.C. § 841(b)(1)(C), which provides for a maximum sentence of 20 years (240 months). As the Petitioner was sentenced to only 120 months, well within the statutory maximum, there is no *Apprendi* error.[4]

As for the claim that the Government failed to introduce any evidence of any illegal drugs or drug amounts, the Petitioner's guilty plea, as noted, establishes the essential elements of the crime. *See United States v. Willis*, 992 F.2d at 490. Having found that the plea was voluntary, intelligent and knowing, and that the Petitioner admitted to being a courier for money used in or obtained from the illegal sale of controlled substances, this claim must also fail. Further, because there was no legal error, there can be no ineffective assistance of counsel for failing to raise this issue. *United States v. Wilkes*, 20 F.3d at 653 (noting that there can be no ineffective assistance of counsel in failing to raise an issue which is not legally viable); *United States v. Mikalajunas*, 186 F.3d at 493 (same).

*- Sufficiency of Evidence, Drug Conspiracy*

The Petitioner also claims, in several memoranda, that there is no evidence that she engaged in a conspiracy to possess with intent to distribute controlled substances. First, as noted previously, the Petitioner's guilty plea to this charge establishes all the essential elements beyond a reasonable doubt. *United States v. Willis*, 992 F.2d at 490. Second, the fact that the Petitioner failed to raise this issue on

direct appeal means that it is procedurally defaulted. As such, relief may only be granted where she demonstrates "cause and actual prejudice resulting from the errors of which he complains or [s]he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *Mikalajunas*, 186 F.3d at 492–93. The Petitioner has not alleged an excusable cause for the procedural default, so she must demonstrate a "miscarriage of justice" which has been defined as proof that she is "actually innocent" by "clear and convincing evidence." *Id.*

The undisputed facts in the record, as outlined in detail above, destroy any claim of actual innocence. The Petitioner seems to be arguing not the facts, but the legal import of those facts. She repeatedly asserts that merely being found in possession of cash does not link her to a conspiracy. The Petitioner fails to account for the mountain of evidence, aside from her "mere" possession of nearly $750,000.00, to link the cash she was carrying with a drug conspiracy.

"The government may establish a violation of 21 U.S.C. § 846 by presenting evidence of '(1) an agreement between two or more persons to undertake conduct that would violate the [federal] laws ... relating to controlled substances and (2) the defendant's wilful joinder in that agreement.'" *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir.1993) (quoting *United States v. Clark*, 928 F.2d 639, 641–42 (4th Cir.1991)). The government may also

---

4. While this order was in draft, the United States Supreme Court decided the case of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which potentially altered the rule in *Apprendi* as applied to the United States Sentencing Guidelines. However, like *Apprendi*, this decision has not been made retroactive to cases on collateral review. As the Petitioner did

not argue either issue (*Apprendi* or *Blakely*) on direct appeal, they are foreclosed in this Court. Should the *Blakely* decision be made retroactive to cases on collateral review, the Petitioner may seek permission from the Fourth Circuit to file a second or successive petition, pursuant to 28 U.S.C. § 2255 and § 2244(d).

use circumstantial evidence to establish a defendant's participation in a conspiracy. *Id.* (citation omitted).

■ Certainly the evidence regarding the Petitioner's cell phone being connected to other phones in a drug investigation, the two witnesses who identified the Petitioner as someone to whom they were directed to give drug money, the numerous hotel reservations in and airline tickets to New York, the numerous cars rented in New York despite the existence of return air reservations, and the bank activity inconsistent with employment all provide substantial evidence that there was an ongoing agreement or arrangement to smuggle drug money out of New York to be distributed or laundered elsewhere. This activity qualifies as participation in a drug conspiracy. *See United States v. Bartley*, 230 F.3d 667, 668–69 (4th Cir.2000) (discussing interrelated conduct and grouping for sentencing purposes in drug and money laundering conspiracies). Accordingly, this claim is also rejected.

- *Downward Departures*

Finally, the Petitioner claims her counsel was ineffective for failing to move for a downward departure at sentencing on several grounds. First, it must be noted that the Petitioner failed to raise this issue on direct appeal, and thus she must "show cause and actual prejudice resulting from the errors of which [s]he complains or [s]he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *Mikalajunas*, 186 F.3d at 492–93. The Petitioner does not allege cause to excuse her procedural default, so her only recourse is "miscarriage of justice."

■ Second, "a misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice." *Id.* at 493; *see United States v. Pregent*, 190 F.3d 279, 283–84 (4th Cir.1999) (noting that, "barring extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding"). There are no extraordinary circumstances here.

■ As to the specific allegations of her entitlement to a downward departure, the Petitioner was not entitled to inclusion within the "safety valve" provision of the sentencing law. *See* 18 U.S.C. § 3553(f); USSG § 5C1.2. The safety valve requires, among other things, that the defendant, "not later than the time of the sentencing hearing," "truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2(a)(5). From the uncontradicted evidence, specifically counsel's affidavit, the Petitioner both refused to accept full responsibility for her actions and to cooperate with the Government in giving information about the conspiracies, which removes her from consideration under the safety valve. *See also United States v. Figueroa*, 199 F.3d 1281, 1282–83 (11th Cir.2000).

■ Second, the Petitioner was in no way a "minor" participant in the drug conspiracy. *See* USSG § 3B1.2. Transporting over three-quarters of a million dollars in drug money so that it could be laundered is in itself a material aspect of a drug conspiracy, and there is uncontradicted evidence pointing to at least 14 other trips for the same purpose. This conduct is far from what the Guidelines envision to be "minor." *See United States v. Kiulin*, 360 F.3d 456, 463 (4th Cir.2004) (rejecting argument that defendant was "mere courier" entitled to departure; defendant made several interstate trips in order to deliver drugs and/or money); *United States v. Pratt*, 239 F.3d 640, 646 (4th Cir.2001) (noting that the "critical inquiry is thus not

just whether the defendant has done fewer 'bad acts' than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense) (citation omitted)." In its discretion, the Court finds that the Petitioner is not entitled to such a departure. The Court also finds that the Petitioner has not demonstrated that a "miscarriage of justice" would result in refusing to grant relief." *Mikalajunas*, 186 F.3d at 492–93.

■ Finally, the Petitioner asserts that her troubled and traumatic past make her more susceptible to committing illegal acts on behalf of others. It is unclear whether the Petitioner asserts entitlement under diminished capacity (§ 5K2.13) or an extraordinary history of abuse (giving rise to a departure under § 5K.2.0). However, she has presented no evidence, other than her own statement, that she was coerced or threatened into committing the instant offense, or that she suffered from a significantly reduced mental capacity. The Court in its discretion and after a review of the applicable law does not find that the Petitioner's allegations rise to a level sufficient to justify a departure. The Court also finds that the Petitioner has not demonstrated that a "complete miscarriage of justice" would result in refusing to grant relief." *Mikalajunas*, 186 F.3d at 492–93. These claims having been rejected, there can be no ineffective assistance of counsel for failing to raise them. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir.1994) (noting that there can be no ineffective assistance of counsel in failing to raise an issue which is not legally viable); *Mikalajunas*, 186 F.3d at 493 (same).

## CONCLUSION

Based on the foregoing, it is

ORDERED that the Government's motion for summary judgment is granted;

the petition for writ of habeas corpus is denied; and this action is ended.

**IT IS SO ORDERED.**